NEW HAVEN AND FAIRFIELD COUNTIES *vs.* THE TOWN
OF MILFORD.

Third Judicial District, New Haven, June Term, 1894. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Whether the term "bridge" includes the approach or causeway at either
end must depend upon the intention with which, in view of all the cir-
cumstances, the term was used in each particular case.

Chapter 214 of the Public Acts of 1889 provided that under certain contin-
gencies the counties of New Haven and Fairfield should, at their own
equal expense, maintain certain bridges over the Housatonic river.
*Held* that in view of the long continued policy of this State to impose
upon towns the duty and burden of building and maintaining neces-
sary highways and bridges therein, it could not be presumed that the
legislature, by the Act in question, intended to depart from that policy
further than the words of the statute required; and that the duty of pur-
chasing land and of constructing necessary approaches to a new bridge
built by the counties near and in place of the old one, remained upon
the towns respectively within which such approaches were situated.

[Argued June 15th—decided July 9th, 1894.]

AMICABLE suit upon an agreed statement of facts to de-
termine the respective legal obligations of the parties as to
building and maintaining an approach or causeway to a
bridge over the Housatonic river recently erected by the
plaintiffs; brought to the Superior Court in New Haven
County and reserved by the court, *Prentice, J.,* for the con-
sideration and advice of this court. *Judgment advised for
the plaintiffs.*

*William L. Bennett,* with whom was *Tilton E. Doolittle,*
for the plaintiffs.

This case arises under the Act of 1889 (Pub. Acts, 1889,
p. 129).

" The word ' bridge ' when used in a statute, may or may
not include its approaches, according to the context and
the circumstances of the case." *Phillips* v. *East Haven,* 44
Conn., 30; *City of New Haven* v. *N. Y., N. H. & H. R. R.,*

39 id., 128; *Burritt* v. *New Haven*, 42 id., 174; *Tolland* v. *Willington*, 26 id., 578.

The word " bridge " in this Act should be construed to mean the bridge without approaches. The maintenance of the bridge was imposed upon the counties against their will. When they took the property of the bridge company, held by the towns, they also become liable to erect a costly bridge and to thereafter maintain it free, losing the right to exact tolls. The statute should therefore receive a strict construction in favor of the counties. No greater obligation should be cast upon them than the law clearly imposes.

This is not the case of a corporation which, for its own profit, makes both bridge and approaches necessary. *City of New Haven* v. *N. Y. & N. H. R. R.*, 39 Conn., 128; *Burritt* v. *New Haven*, 42 Conn., 200.

The counties should not be held to greater obligation than the bridge company. It has been shown that the bridge company had no interest in the approach to its bridge. Up to the very wood-work of the bridge was public way when the counties took the bridge. When the foot left the public way it stepped upon the draw of the bridge.

The way connecting with the Milford end of the bridge was not, in 1889, the property of the Washington Bridge Company, but was a public highway within the jurisdiction of the town of Milford. The Act should not be so construed as to oust the town of this jurisdiction and give it to counties of Fairfield and New Haven. The practical inconvenience of such joint jurisdiction is to be avoided. Properly and naturally the control of the highway is in the town of Milford. *Phillips* v. *East Haven*, 44 Conn., 34.

The Act provides no means by which the counties can procure the land necessary for the connecting highway and approach. The power to condemn land is not given to the counties by the Act. This consideration seems decisive of the construction. The counties should not be held obliged to do that which they have no power given them to do. The town on the contrary has the power.

*William B. Stoddard* and *Stiles Judson, Jr.*, for the defendant.

I. The only question between the parties to this suit is, which of the parties should build and maintain the approach to Washington bridge.

The statute provides that towns shall build, and repair all necessary highways and bridges, etc., except where said duty belongs to some particular person. General Statutes, § 2666. Towns have no power to lay out highways except by statute. *Fowler* v. *Savage*, 3 Conn., 96. The first statute authorizing a town to lay out highways was in 1773. *Fowler* v. *Savage, supra.* No obligations rest upon territorial or municipal corporations in this State by common law to lay out, construct or repair highways. *Borough of Stonington* v. *States*, 31 Conn., 214; *Reed* v. *Town of Cornwall*, 27 id., 58. We therefore start with the law well settled that the town is by the statute law bound to build and repair only such roads and bridges within its boundaries, as it appears it is not the duty of some other party to build or repair.

II. Section 4 of the Act of 1889 (Pub. Acts, 1889, p. 130) makes it the duty of the counties to keep, maintain, operate and control said bridge as a free public bridge. The intent of the Act is to compel the counties to operate the bridge. The duty is clearly placed upon the counties. Before a bridge can be operated (or used) it must have an approach, and it will be presumed the legislature intended the counties to build such approaches as are necessary to operate the bridge. *Tolland* v. *Willington*, 26 Conn., 582; *Burritt* v. *City of New Haven*, 42 id., 200; *Minus* v. *Boone County*, 66 Iowa, 273; *White* v. *Quincy*, 97 Mass., 432; *Parker* v. *Boston & Maine R. R. Co.*, 3 Cush., 107; *Titcomb* v. *Fitchburg R. R. Co.*, 12 Allen, 254; *Carter* v. *Boston & Prov. R. R. Co.*, 139 Mass., 525; *Whitcher* v. *Somerville*, 138 id., 435; *Cox* v. *Stevens*, 14 Me., 205; *State* v. *Gorham*, 37 id., 461; *The D. V. Turnpike* v. *Board of Comm'rs*, 72 Ind., 237; *Philip* v. *Aurora Lodge*, 87 id., 505; Sherm. & Redf. on Negligence, 3d ed., § 253; *King* v. *West Riding of York*, 7 East, 588; *Bardwell* v. *Town of Jamaica*, 15 Vt., 438; *Weeks* v. *Town*

*of Lyndon,* 54 id., 638 ; *North Staffordshire Railway Co.* v. *Dale,* 8 El. & B., 836 ; *West Riding of York* v. *The King,* 5 Taunt., 284; *Board of Chosen Freeholders* v. *Strader,* 3 Harr. (N. J.), 108.

III. In the charter of the Washington Bridge Co. and all of the acts and resolutions passed by the legislature, we find nothing said about approaches. The word bridge alone is used. Whether the word bridges includes approaches may be an open question in this State. There are many authorities which hold that the word includes approaches. Several cases are cited in *Tolland* v. *Willington,* 26 Conn., 583.

This bridge is a large and expensive structure passing over a State or national waterway and connecting two counties, and used by the inhabitants of the State at large. And past legislation shows that it never has been the policy of this State to cast these large burdens on the towns that are so unfortunate as to have large waterways within their limits. It has never been done to our knowledge, and should not be allowed at this day.

IV. Taking into consideration the several legislative acts relating to said turnpike and bridge company and the mode of operating and repairing the bridge and highway during more than fifty years past, the liability for the construction of this approach is fixed upon the bridge company and therefore upon the counties. *Tolland* v. *Willington,* 26 Conn., 580 ; *Phillips* v. *East Haven,* 44 id., 30 ; *Com.* v. *Deerfield,* 6 Allen, 454.

The State of Pennsylvania seems to have laws similar to ours, making it the duty of towns to build and maintain ordinary bridges. But all large and expensive bridges were built and maintained by counties, and when the question arose between a county and town concerning the duty of providing an approach to a county bridge, it was held that the duty belonged to the county. *Com.* v. *Westfield,* 11 Pa. County Court Rep., 369 ; *Everitt* v. *Bailey,* 150 Pa. 152.

ANDREWS, C. J. This is an amicable suit brought to the Superior Court in New Haven County, and reserved for the

advice of this court. By an Act of the General Assembly —Chap. 214, p. 129, Public Acts of 1889—the owners of all bridges across the Housatonic river between the counties of New Haven and Fairfield were authorized to transfer all their right, title, and interest in and to the stock, property and franchises in the said bridges, to the said counties; the said Act then further provided as follows:—

" Sec. 4. Upon such transfer being made to said counties, it shall be the duty of said counties to take the charge, management, and control of the said bridges, and to keep, maintain, operate, and control them as free public bridges.

" Sec. 5. The expense of maintaining and repairing said bridges shall be paid in equal proportions by each of said counties, by orders drawn by the county commissioners of said counties upon their respective treasurers, and the county commissioners of said counties, acting as a joint board, shall have the control and management of the said bridges."

The matter of the present suit concerns Washington bridge, so-called, a bridge across the Housatonic river between the town of Milford in New Haven county and the town of Stratford in Fairfield county. At the time said Act was passed said bridge belonged to a corporation known as the Washington Bridge Company. Thereafter the owners of all the stock of said corporation conveyed it to said counties pursuant to that Act and the said counties became the sole owners of all the rights, title, and interest in the stock and in the property owned by said corporation, and have since that time maintained the said bridge as a free and public one.

In the year 1892 it became necessary to erect a new bridge over said river, and the said counties have now erected a new iron bridge near the old bridge, but a few feet north of it, at an expense of $90,000. Said new bridge is several feet higher than the old bridge and the adjoining land, and it is now necessary to purchase land for a new approach for said bridge, and to expend a considerable sum of money in building the approach to said new bridge. The approach

east from said new bridge will be entirely within the town of Milford.

The claims of the parties are these : The aforesaid counties claim that said approach in said Milford is no part of said bridge, and that the said counties are not bound to erect or maintain the same ; but that it is the duty of said town of Milford to erect and maintain the said approach.

The said town of Milford claims that said approach or causeway is a part of said bridge, and that it should be built and maintained by the said counties. Counsel for the town of Milford rest their argument mainly on the meaning of the word " bridge " as given in the dictionaries, and in the various decided cases which they have cited. We are not disposed to withhold anything from the force of their argument. But we think there is in this case another consideration which must be controlling. And that the case depends " not upon any necessary legal meaning to be given in all cases to the word 'bridge' but upon the meaning of that word as it was used in the Act referred to ; upon the intention of the legislature as evidenced by all the words used, and not simply by one word." *Phillips* v. *East Haven,* 44 Conn., 31.

The policy of this State has always been to impose upon towns the duty and the burden of building and maintaining all necessary highways and bridges within their respective limits, except where such duty belonged to some particular person. Necessary bridges between towns are to be built and maintained at their equal expense. The statutes now in force—General Statutes, §§ 2666, 2667, are but the continuance of similar ones which have been in existence from the earliest times. This policy has been pursued because it has been supposed to be the most equitable as well as the most convenient method by which the expense and care of supporting highways and bridges could be distributed. The same policy made it the duty of the selectmen in each town to supervise the highways and bridges in their towns. The statute of 1889 was, in respect to the bridges across the Housatonic river, between the county of New Haven on the

one side and the county of Fairfield on the other, a depart-
ure from this ancient policy.   It puts the building and main-
taining these bridges upon the two counties, and the duty to
supervise them upon the county commissioners of the two
counties as a joint board.   The selectmen of a town have
a much more intimate connection with the people of that
town than do the county commissioners of a county with
the people of that county.   The selectmen are elected by
the people of their town and are directly responsible to them.
The county commissioners are not so elected and have no
such responsibility.   Long experience has shown that high-
ways and bridges are much better taken care of and at a
less expense, where the persons upon whom rests the duty
of taking the care are directly accountable to that commu-
nity which must bear the expense of the care and which is
made liable if the proper care is not taken, than in any other
way.   It cannot be supposed that the legislature, by the Act
of 1889, intended to depart from the established policy any
further than the words of the statute require.   *Pro tanto*
that statute is a repeal of the general statute because it is
inconsistent with the general one.   Such a repeal is never
extended further than the inconsistency compels.

The case shows that " it is now necessary to purchase land
for a new approach to said bridge."   But no authority is
given in the Act to the counties, or to the county commis-
sioners, to buy " land."   All that the counties took by the
transfer to them, all that they had power to take by the Act,
was whatever they took under the term " bridge."   If that
term could be held to include the approach to the old bridge,
it certainly could not include the power to acquire other
lands for a different approach to another bridge.   Nor is any
power conferred on them to take land by condemnation for
such approach.   The approach to a bridge may sometimes
be regarded as a part of the bridge itself, and sometimes as
a part of the highway leading to the bridge.   The circum-
stances of each case must control.   In this case if the ap-
proach is regarded as a part of the highway leading to the
bridge on the Milford side, there is ample power in that town

to take the land for that purpose. Taking all the circumstances together we think the legislature intended to confer authority on the counties to take charge only of the bridge structure, excluding the approach.

The Superior Court is advised to render judgment sustaining the claim of the counties.

In this opinion the other judges concurred.