THE STATE EX REL. LEWIS F. JUDSON *vs.* THE COUNTY COMMISSIONERS OF FAIRFIELD COUNTY AND OF NEW HAVEN COUNTY.

Third Judicial District, Bridgeport, April Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

Chapter 214 of the Public Acts of 1889 authorized several towns on either bank of the Housatonic river, to transfer all their right and interest in certain bridges over the river, to the counties of New Haven and Fairfield, and provided that these counties, after such transfers had been made, should take the charge and control of said bridges and maintain and operate them as free public bridges. Upon a suit subsequently brought (*New Haven and Fairfield Counties* v. *Milford*, 64 Conn., 568), it was held that the term "bridge," as used in the Act, did not include the embankments or approaches at either end of the structure, the duty of building and maintaining which still rested upon the respective towns within which they were located. In 1895 an Act

was passed (Public Acts of 1895, Chap. 266) providing that "the term bridge or bridges" in the Act of 1889, should " be construed to include the bridge approaches." Upon an application for a writ of mandamus requiring the counties to construct and maintain approaches to one of these bridges, it was held that the Act of 1895 was not intended to operate retroactively, thereby enlarging the transfers already made by the towns and extending the burden imposed upon the counties, but was designed to enable the towns which had already constructed, or those which might thereafter construct, such approaches, to transfer them to the counties, from which time it would become the duty of the latter to maintain them as part of the bridge. (*Two judges dissenting.*)

[Argued April 24th—decided June 5th, 1896.]

PETITION for a writ of mandamus to compel the respondents to build the approaches to the Washington bridge, so-called, over the Housatonic river, brought to the Superior Court in Fairfield County and tried to the court, *George W. Wheeler, J.,* upon the respondent's motion to quash the alternative writ; the court granted the motion and denied the application for a peremptory mandamus, and the petitioner appealed for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Stiles Judson, Jr.* and *William B. Stoddard,* for the appellant (petitioner).

It is the duty of the counties to construct proper approaches to the bridge built by them. *Com.* v. *Loomis,* 128 Pa. St., 174; *Penn Township* v. *Perry County,* 78 id., 459; *Commissioners* v. *Gravel Road Co.,* 87 Ind., 504; *Commissioners* v. *Deprez,* ibid., 511. It was the duty of these respondents to build such terminal on the Stratford side of the river, without regard to the passage of the Act of 1895. And that proposition is advanced notwithstanding the decision of this court in *Milford* v. *Counties,* 64 Conn., 568, because in that case it appeared and was a fact that an embankment would become necessary in the nature of a road approach; whereas it appears in the case at bar, by the allegations of the writ, that the alleged default is in a failure to connect in some proper manner the superstructure with the adjacent

land. It appeared in the case of *Milford* v. *Counties*, that on the east end of this bridge private property intervened between the land abutment and the highway, *requiring condemnation proceedings to gain access to the bridge at all*, and the counties could not then exercise such power. But even if the counties required additional land for that purpose, the legislature has clothed the counties, since the decision in *Milford* v. *Counties*, with ample power to obtain such land, by proceedings of condemnation. Public Acts of 1895, Chap. 265. So that the controlling reason for the interpretation of the legislative intent as made in the case referred to, is no longer present. At all events, the amendment of 1895 casts this duty upon the counties. It was intended by this amendment to read into the Act of 1889 a rule of interpretation that should determine the rights of these parties. The fact that the amendment of 1895 might give a retrospective force to the Act of 1889, does not affect the validity of the remedial legislation. *Shays' Appeal*, 51 Conn., 164; *Bridgeport* v. *Ry. Co.*, 15 id., 496; *Beach* v. *Walker*, 6 id., 197; *Goshen* v. *Stonington*, 4 id., 225. But we fail to discover wherein the writ sets forth any facts that disclose any impairment of any vested rights of the towns. Where the statute is in its nature remedial, a liberal construction will be given it to advance the remedy, and the fact that such a statute calls for a retroactive operation is not objectionable, if vested rights are not thereby disturbed. Sedgwick, Stat. and Const. Law, 173; *Hyman* v. *Bayne*, 83 Ill., 264; Endlich on Int. of Stat., § 394; *Tilton* v. *Swift & Co.*, 40 Iowa, 78; Cooley, Const. Lim., 381; Sutherland on Stat. Constr., §§ 435, 482; *Haskel* v. *City*, 30 Iowa, 235. If it is the duty of respondents to maintain the approaches to the bridge, it is their duty to build them when necessary by reason of the demolition of the old approaches. *Howe* v. *Commissioners*, 47 Pa. St., 361.

*George P. Carroll* and *William L. Bennett*, for the appellees (respondents).

The counties were charged with no duty of building approaches under the Act of 1889. *New Haven County* v.

*Milford*, 64 Conn., 568. The amendment of 1895 can, and ought to be construed, as having a prospective operation, only. *Citizens Gas Light Co.* v. *Alden*, 44 N. J. L., 653; *Matter of Miller*, 110 N. Y., 222; *Kelsey* v. *Kendall*, 48 Vt., 24; *Middletown* v. *N. Y., N. H. & H. R. R. Co.*, 62 Conn., 492, 497. *Chew Heong* v. *U. S.*, 112 U. S., 536. If the Act of 1889 is now to receive a different construction, the rights of the counties acquired under the first construction should be protected. *Haskett* v. *Maxey*, 134 Ind., 190; *Ins. Co.* v. *Debolt*, 16 How., 415; *Douglass Co.* v. *Pike Co.*, 101 U. S., 677; *Stephenson* v. *Boody* (Ind.), 38 N. E., 331. The legislature cannot bring into existence and establish against a party, a demand which previously he was neither legally nor equitably bound to recognize and satisfy. 7 Law. Rights and Rem., § 3864; *Shay's Appeal*, 51 Conn., 164; *Ohio, etc., R. R. Co.* v. *Lackey*, 78 Ill., 55; *Medford* v. *Learned*, 16 Mass., 217; *People* v. *Supervisors*, 43 N. Y., 135. Under the Act of 1889 the obligation upon the counties to maintain Washington bridge was only contingent upon, and subsequent to, a conveyance of the bridge by the towns to the counties. So now the obligation of the counties to build or construct approaches to the bridge, is contingent only upon a conveyance of the bridge approaches or necessary land for bridge approaches, by the towns to the counties. No such transfer has taken place. And the respondents have no duty in the premises. *Pumphrey* v. *Mayor*, 47 Md., 145, 150; *Hines* v. *Lockport*, 50 N. Y., 236, 238. Full effect is given to the legislation of 1895, by construing Chap. 265 as giving the counties the option of taking land for bridge approaches, if they are dissatisfied with the character and condition of the approaches provided by the towns. Where there is a continuing duty resting upon a public officer, irrespective of the personality of the incumbent, and where the duty is in essence that of the corporation itself, the writ may be directed against the public officer as such. *Thompson* v. *United States*, 103 U. S., 480; *County Coms.* v. *Selleu*, 99 id., 624; *State's Attorney* v. *Selectmen of Branford*, 59 Conn., 409. The decision of the Superior Court to issue or to refuse a

peremptory mandamus, was a matter of discretion and is not reviewable on appeal.  *Chesebro* v. *Babcock*, 59 Conn., 214; *Leyton* v. *State*, 4 Dutch. (N. J.), 575.

ANDREWS, C. J.   This was an application for a writ of peremptory mandamus, to require the defendants to build approaches at each end of Washington bridge.   The defendants are the county commissioners of New Haven county and of Fairfield county.   The Superior Court issued an alternative writ which was duly served.   On the return day the defendants appeared in court and moved that the alternative writ be quashed.   The court granted that motion and the relator has appealed to this court.

It is necessary to consider but one question.   The alternative writ—paragraph ten—alleges that " it is the legal duty of the county commissioners of said counties of New Haven and Fairfield, to build safe, substantial and permanent terminals or approaches at either end of said bridge structure, in order to provide the public with safe and reasonable access to said bridge."   If the facts set forth in the writ do not show this averment to be correct as a legal conclusion, then the motion to quash was properly allowed, and there is no error.

The General Assembly passed an Act in 1889—Public Acts of 1889, Chap. 214, p. 129—by which the owners of all bridges across the Housatonic river between the counties of New Haven and Fairfield, were authorized to transfer all their right, title and interest in and to the stock, property and franchises in the said bridges, to the said counties.   The Act then further provided as follows: " Sec. 4. Upon such transfer being made to said counties, it shall be the duty of said counties to take the charge, management, and control of the said bridges, and to keep, maintain, operate, and control them as free public bridges.   Sec. 5. The expense of maintaining and repairing said bridges shall be paid in equal proportions by each of said counties, by orders drawn by the county commissioners upon their respective treasurers, and the county commissioners of said counties, acting as a joint

board, shall have the control and management of the said bridges."

After the passage of that Act, the towns of Stratford, Bridgeport and Milford, took such steps as they deemed necessary to convey all their interests in the Washington bridge to said counties; and presumably all the other towns in said counties between which there were bridges over the Housatonic river, did the same as to such bridges. In that condition of things the case of *New Haven and Fairfield Counties v. The Town of Milford*, 64 Conn., 568, arose, and was decided as appears in our reports. That decision showed that it was the duty of the commissioners of said counties to build and maintain all the bridge structures named in said Act, but that their duty in such behalf extended no further; that it was not their duty to build or maintain any approach to any of said bridges. While it is true that the town of Milford was the only one of the towns interested which was a party to that record, both counties and the county commissioners of both were parties. That decision defined the duty and liability of the counties and of the county commissioners, under the said Act. The duty of the towns remained precisely the same that it had been before that Act was passed, except so far as changed by that Act, as construed by that decision. That is, it remained the duty of the town of Milford to build and maintain the approach at the end of said Washington bridge which is in that town, because it was a part of the highway in that town; and for the same reason it was the duty of the town of Stratford to build and maintain the approach at the end of said bridge which is in that town. And it was, in like manner, the duty of each of the other towns to build and maintain the approach to any bridge named in said Act, which was in such town. We understand this to be conceded by the relator.

It ought to be said that the defendants are those executive officers of these counties who are charged with the duty of carrying out whatever obligations these counties are under in respect to any of these bridges. Whatever obligation rests on the counties in this matter, it is the duty of the

defendants to see that it is performed. The duty of the counties is the duty of the defendants. *State's Attorney* v. *Selectmen of Branford*, 59 Conn., 402, 411. And of course when there is no duty upon the counties there is no duty upon the defendants.

It is claimed in behalf of the relator, that certain legislation in 1895 transferred the duty of building and maintaining the approaches to the Washington bridge, from the towns of Stratford and Milford to the two counties of New Haven and Fairfield. In other words, that such legislation had relieved the said towns of the duty which theretofore rested upon them in respect to these approaches, and had imposed it upon the counties.

The legislation of that year which it is claimed has effected this change, is in two Acts; chapters 245 and 246, p. 615, of the Public Acts of that year. It had been provided in § 1969 of the General Statutes of 1888, that any county might take land which the commissioners deemed necessary for the site, or for an addition to the site, of any county building; and chapter 245 of the Public Acts of 1895 added to the said section of the General Statutes the words, "or for the construction of bridges or bridge approaches." Chapter 246 of the Public Acts of 1895 amended Chap. 214 of the Public Acts of 1889, hereinbefore quoted, by adding to section five of said Act, the following: "The terms bridge or bridges in this Act shall be construed to include the bridge approaches."

The Act of 1889 did not impose upon the counties any immediate duty. But a duty which was to arise afterwards, when the owners of the several bridges over the Housatonic river between the said counties, should convey to the counties all their interest therein. A certain conveyance of Washington bridge had been made to the said counties, and it appears that all the duty which devolved on the counties in respect to the Washington bridge by that conveyance to them of that bridge, had been fully discharged.

The question then in the case is this: Did the legislature intend by the said Acts of 1895 to impose any new and fur-

ther duty on the counties, in the absence of any further con-
veyance by the towns? If that had been the real intention,
it would have been natural and easy to say so in direct
words. And there being in these Acts no such direct words,
the presumption is that such intention did not exist. The
effect which the legislature intends shall result from any
Act it has passed, can only be discovered by the words it
has used in the Act. A legislative intention not expressed
in some appropriate words, has no legal existence. In seek-
ing to ascertain the legislative intent in any case, the ques-
tion is, not what did the legislature mean to say, but what
is the meaning of the words the legislature has used. *Lee
Bros. Furniture Co.* v. *Cram*, 63 Conn., 433, 438; and in ar-
riving at the meaning of the words used by the legislature,
if they are at all uncertain, or doubtful, reference may be
had to the surrounding circumstances. In the light of such
circumstances the words are usually made clear. *N. Y. &
N. E. R. R. Co.'s Appeal*, 62 Conn., 527, 534. The legisla-
ture is always presumed to know all the existing statutes,
and to have in mind the effect its action or non-action will
produce. *State* v. *Staub*, 61 Conn., 533, 566. In enacting
Chap. 246 of the Acts of 1895, it is certain the legislature
had in mind the Act of 1889, because especial reference is
made therein to that Act. It is equally certain that the
legislature had in mind the judicial construction which had
been put on that Act in the case of *New Haven and Fairfield
Counties* v. *Milford, supra*. That case made it the duty of
Stratford and Milford to provide necessary approaches to
Washington bridge, as we have already pointed out. The
legislature might easily have assumed that those towns had
performed that duty. At the argument of the former case
—*New Haven and Fairfield Counties* v. *Milford*—it was
stated, and as it was not denied, we have assumed it to be
true, that the towns of Derby and Huntington had at their
own charge provided approaches to the bridge at Derby,
which is one of the bridges named in the Act of 1889. It is
altogether probable that the legislature had that fact also in
mind, and intended to have the other towns do the same;

and to enact by the amendment of 1895, that if the towns of Stratford and Milford had provided approaches to Washington bridge, or when they should do so, and should convey them by appropriate action to the said two counties, that then, and not until then, it should be the duty of the counties " to take charge, management and control of the said bridge, including the approaches, and to keep, maintain, operate and control " the same as a part of the said bridges.

It is a firmly established rule of construction that all statutes are intended to operate prospectively. Retroaction is never to be allowed to a statute unless the words in which it is expressed, so clearly require it as to exclude any other reasonable interpretation. *Plumb* v. *Sawyer*, 21 Conn., 355; *Smith* v. *Lyon*, 44 id., 177; *Middletown* v. *N. Y., N. H. & H. R. R.*, 62 id., 497.

If the intention above mentioned is the one which the legislature designed to express by the Act of 1889 as amended by the Act of 1895, then the Act as amended is simple, easy, consistent, has only a prospective operation, and produces equality among all the towns affected by it. From the language of these Acts, and because there is a total absence in them of any words imposing on the counties such a duty as the relator claims, we think this is the construction which ought to be put on them. The interpretation urged by the relator would produce the contrary effects; especially it would require that a retroactive force be given to the Acts of 1895; a result which, as we have shown, ought not to be allowed.

There is no error.

In this opinion FENN and BALDWIN, Js., concurred.

HAMERSLEY, J. (dissenting). The Act of 1889 (Public Acts of 1889, p. 129) placed upon the counties of Fairfield and New Haven the duty of maintaining and operating as free public bridges, five bridges across the Housatonic river. Some of these bridges were toll bridges, owned by private corporations or individuals; all were subject to some property rights in individuals or towns; as incidental to the duty

of maintenance, the Act provided that the counties should not be called upon to pay for any of those property interests. For this purpose, the first three sections of the Act deal with the property interests in each of the bridges separately.

Washington bridge was owned by a corporation and operated as a toll bridge; the stock of this corporation was owned by the three towns of Milford, Stratford and Bridgeport, and they were authorized to transfer to the counties, without compensation, all their interest in the stock, property and franchises of the corporation, and in the bridges. Bennett's bridge, between the towns of Southbury and Newtown, was owned by private persons; these "owners" were authorized to transfer in the same manner their interest in the bridge, but the towns of Southbury and Newtown, having no property rights in the bridge, were not authorized to transfer anything. As to the other three bridges, each town having property rights in each bridge, was authorized to transfer such interest. Having thus provided for securing the counties in the case of each bridge, against any claims for the appropriation of property rights, the real object of the Act is expressed in § 4, which provides that "upon such transfers being made to said counties, it shall be the duty of said counties to take charge, management, and control of said bridges, and to keep, maintain, operate, and control them as free public bridges." Section 5 provides for apportioning between the counties the expense of maintenance, and that "the county commissioners of said counties, acting as a joint board, shall have control and management of said bridges."

In 1895 (Public Acts of 1895, p. 615) this Act was amended, by adding to section five of said Act the following: "The terms bridge or bridges in this Act shall be construed to include the bridge approaches." The relator claims that this definition of "bridges" applies to that term as used in the Act, in respect to the duty of maintenance imposed upon the counties in sections 4 and 5, and that from the passage of the amendment the imperative duty of maintenance of bridge and bridge approaches, is placed upon the counties. The respondents claim that the language of the

amendment requires the words " and bridge approaches" to be added to the word " bridge " or " bridges " wherever it occurs in the first three sections of the Act, and that by so adding those words, the Act as amended severally requires the respective persons who have already transferred to the counties their property in the bridges, to convey to the counties bridge approaches already built, and if such approaches have not been built, to build and convey them to the counties; and " that then and not until then, it should be the duty of the counties to take the charge, management, and control of the said bridges, including the approaches."

The literal application of the respondents' claim makes the amended Act difficult of any rational construction. The language of the amendment is certainly loose and not in proper form for accomplishing the evident purpose of the legislature; but when the legislature expresses its will in language open to criticism for want of accuracy and appropriateness, it is the duty of this court to give effect to a legislative purpose plainly, however awkwardly, expressed; and certainly this court should not be asked to employ the subtleties of hypercriticism to discover a possible meaning that will make the law ineffective. " In arriving at the legislative intent as expressed in any statute, it is always expedient to recur to the circumstances which surrounded the legislature at the time the statute was passed." *N. Y. & N. E. R. R. Co.'s Appeal*, 62 Conn., 527, 534.

Applying this rule to the Amended Act so far as it affects Washington bridge, the legislative intent expressed in the language used seems to me unmistakably plain. In pursuance of this Act as originally passed, the towns of Stratford, Milford and Bridgeport, not merely as municipal corporations, but as property owners, had transferred to the counties their interest in all the stock, franchises and property of the bridge corporation and in the bridge owned by that corporation, and any interest owned by the corporation in the approaches of the bridge were included in that transfer; the towns were not authorized, and are not authorized by the amended Act, to transfer any so-called interest either of

them may have in any public highway, as such, by virtue of the burden of maintaining highways with which they are charged by law; such interest is inseparable from the duty to maintain, and when that duty is imposed on another State agency, the "interest" of necessity follows the duty. The interest transferred by the towns in pursuance of the authority given, was an interest in property, including $4,000 in cash paid over to the counties. Upon such transfer the duty of maintenance became absolute in the counties, and could not unqualifiedly be replaced on the bridge corporation, or upon the three towns which owned its stock, without the plainest violation of vested rights. The counties also, in pursuance of the powers implied from the duty of maintenance, had built a new "Washington bridge" in a different place, and so constructed the bridge that it could not be used without building an approach and condemning land for that purpose. In an agreed case, submitted to this court by the counties and the town of Milford, it had been held that the law of 1889, imposing on the counties the duty of maintaining a free public bridge at this place, did not impose upon the counties the duty of building and maintaining this approach; and this construction had been given to the law on the ground that as the counties had no power to condemn the land necessary for such approach, the legislature could not have intended to impose a duty without giving the powers of performance; it is at least doubtful if the construction could be maintained on any other ground. The approach, therefore, if built, must be built by the town of Milford alone; not by force of any obligation growing out of the Act of 1889 and resting upon it in common with Stratford and Bridgeport, not by force of any obligation to maintain an existing highway, but solely by force of an obligation, implied from the general duty of towns in respect to highways, to lay out a new highway in order that the public might reach the bridge highway which the counties had established. These conditions appear in the case of *New Haven and Fairfield Counties v. Milford*, 64 Conn., 568, and the legislature must have had this judicial construction

of the Act of 1889 and the reasons for it in mind, when the amendment of 1895 was enacted; and so it said, too plainly to be misunderstood, that the term " bridge " used in the Act to define the duty of maintenance, and construed by this court as excluding the approach made necessary by the mode of building the new bridge, should hereafter include the approaches; and at the same time, on the same day, and, as it were, with the same breath, the legislature declared that the counties should have power to condemn the land necessary for building such approach. Public Acts of 1895, p. 615. Surely there can be no question of the expressed intent of the legislature to put upon the counties in respect to this approach, the same duty of maintenance already resting upon them under the Act of 1889, in respect to the bridge exclusive of the approach. Such legislation is not retrospective because it takes a duty from one public body and imposes it on another; but if the amendment could be construed, as claimed by the respondents, so that after the three towns had turned over their property to the counties in order that the bridge might be maintained as a free public highway, their transfer is declared to be of no avail and they are ordered to make another of something they do not possess and cannot convey, before the duty to maintain the bridge can be exercised, the legislation would be retrospective in the most vicious form possible.

I must dissent from the conclusions reached by the majority of the court. I think it is clearly the legal duty of the counties to maintain the approaches to the Washington bridge, as recited in the alternative writ, and that there is error in the judgment complained of.

In this opinion TORRANCE, J., concurred.