973 F.2d 70
 Kenneth D. GOLDBERG, Plaintiff-Appellee,
v.
TOWN OF ROCKY HILL, Defendant-Appellant.
Dana Whitman, Jr., Frances Sacerdote, Paul Daukas, Paul
Delaney, William Pacella, Joseph Senofonte, Joseph
Tomassone, Donald Unwin, Thomas Waldron,
and Christine Zazzaro, Defendants.
 No. 1103, Docket 91-9290.
 United States Court of Appeals,
Second Circuit.
 Argued March 16, 1992.
Decided Aug. 10, 1992.
 
 William S. Zeman, West Hartford, Conn. (Joel M. Ellis, of counsel), for defendant-appellant.
 Martin S. Stillman, Rocky Hill, Conn. (Stillman & Dicara, of counsel), for plaintiff-appellee.
 Before: MESKILL, Chief Judge, PRATT, Circuit Judge, and NICKERSON, District Judge of the United States District Court for the Eastern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Surprisingly, the issue that is presented by this appeal--absolute immunity for a municipal corporation--has not previously been decided in this circuit. The Town of Rocky Hill, Connecticut, claims it is entitled to absolute legislative immunity from damages alleged to have been suffered by plaintiff Kenneth D. Goldberg when the town, by legislative action, eliminated his job as a supernumerary police officer in retaliation for Goldberg's having supported the chief of police on a controversial issue. The district court held that by logical extension of Supreme Court precedent, a municipality enjoys no absolute legislative immunity for its unconstitutional legislation; it therefore denied the town's motion to dismiss the complaint. 740 F.Supp. 118. On this interlocutory appeal, we agree with the analysis of the district court, and therefore affirm.I. FACTS
 
 
 2
 Goldberg was one of five, part-time, supernumerary police officers for the town. He was commander of the crime-prevention bureau and in charge of all town supernumerary police officers. On April 7, 1987, a lieutenant of the Rocky Hill Police Department cancelled a dispatch of two police officers to a call, because the term "Puerto Ricans" was used to describe two "suspicious looking" individuals, although there was no actual evidence to suggest wrongdoing. An automobile was later reported stolen from the area in which the two individuals had been sighted. A citizen filed a complaint against the lieutenant on April 23, 1987, alleging misconduct for having recalled the police cruiser. At a town council meeting attended by all council members on June 15, 1987, the chief of police declined to discipline the lieutenant, stating that he had acted in good faith and had used his best judgment.
 
 
 3
 Goldberg publicly indicated on several occasions that he supported the chief of police, and that he felt the town officials--the mayor, the town council members, and the town manager--were wrong to criticize the chief concerning his handling of the incident. After the June 15 council meeting, Goldberg became the victim of various official slights. For example, the town manager subjected Goldberg to harassing and demeaning directives, excluded him from plainclothes detail, and stripped him of the title of "Commander" which he had held for two and one-half years. A short time later, the town council passed two separate resolutions. The first limited the hours that supernumerary police officers were permitted to work per week; the second eliminated from the budget entirely the positions of all supernumerary police officers. Soon thereafter, town manager Whitman contacted a number of the former supernumeraries and offered them positions as "Special Constables" pursuant to Conn.Gen.Stat. § 7-92, but he made no such offer to Goldberg.
 
 II. PROCEDURAL BACKGROUND
 
 4
 Goldberg brought this suit under 42 U.S.C. § 1983, claiming that the actions taken by the town against him were in retaliation for his constitutionally-protected public defense of the chief of police. His complaint named as defendants the town, its mayor, its town manager, and its eight councilmen. All of the individual defendants were sued in their official, not individual, capacities.
 
 
 5
 Claiming absolute legislative immunity as local legislators, the individual defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1). On that motion, the district court held: (A) that because the individual defendants were sued in their official capacities, the suit against them was the equivalent of a suit against the town itself; (B) that the individual defendants were exposed to no personal liability, because any judgment would be entered against the town; and (C) that the individuals, therefore, did not enjoy absolute legislative immunity against Goldberg's official-capacity claims against them.
 
 
 6
 The individual defendants appealed the interlocutory order denying their motion to dismiss, but the appeal was withdrawn on consent, induced apparently by the plaintiff's stipulation to dismiss the action against all defendants except the town itself.
 
 
 7
 The town then moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), also claiming absolute legislative immunity. The town argued: (A) that the conduct complained of was a retaliatory elimination of Goldberg's position from the town budget, unquestionably a legislative act; (B) that a suit against the town is the same as a suit against the town legislators in their official capacities; (C) that the legislators, when sued in their official capacities, have absolute legislative immunity; and (D) that the town logically must also have absolute immunity for the legislation enacted by its legislators.
 
 
 8
 The district court rejected the logic of the town's argument and, based primarily on a series of statements by the Supreme Court, denied the motion to dismiss, holding that the town was not entitled to absolute immunity for its legislative act. Viewing the district court's order as an immediately-appealable collateral order, the town brought this interlocutory appeal. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("denial of substantial claim of absolute immunity is an order appealable before final judgment"); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).
 
 III. DISCUSSION
 
 9
 Discussion of this immunity issue begins with, and indeed very nearly ends with, an examination of the Supreme Court's landmark decision in Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, overruling a portion of its decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court concluded that a municipality is a "person" amenable to suit under § 1983, although its liability could not be based upon the principle of respondeat superior. Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36. Instead, a municipality could be held liable "when execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy". Monell, 436 U.S. at 694, 98 S.Ct. at 2037 (emphasis added). The official policy must be "the moving force of the constitutional violation". Id. Elsewhere in the opinion, the Court expanded on the potential liability of municipalities: "Local governing bodies * * * can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where * * * the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690, 98 S.Ct. at 2035-36.
 
 
 10
 In this case, all parties agree that the focal point of the conduct Goldberg complains of--elimination of his position as a supernumerary policy officer--was a legislative act of the town and therefore qualifies under Monell as municipal "policy * * * made by its lawmakers", id. at 694, 98 S.Ct. at 2037, for which the town could be held liable absent immunity. The town pursues on appeal, however, its claim, rejected by the district court, that it is entitled to absolute immunity for its legislative acts. We reject the claim out of hand.
 
 
 11
 We accept, of course, the town's assertion that legislators are accorded absolute immunity from suits for damages under § 1983. See Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (state legislators); Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 403-05, 99 S.Ct. 1171, 1178-79, 59 L.Ed.2d 401 (1979) (members of a regional planning agency). While this circuit has apparently not previously ruled on the question of the entitlement of local legislators to absolute immunity, we noted in United States v. City of Yonkers, 856 F.2d 444, 456 (2d Cir.1988), rev'd on other grounds sub nom. Spallone v. United States, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), that at least nine other circuits have extended absolute immunity to local legislators. See, e.g., Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 21 (1st Cir.1992); Haskell v. Washington Township, 864 F.2d 1266, 1277 (6th Cir.1988); Aitchison v. Raffiani, 708 F.2d 96, 98-100 (3d Cir.1983); Reed v. Village of Shorewood, 704 F.2d 943, 952-53 (7th Cir.1983); Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir.1982), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1349-50 (9th Cir.1982); Hernandez v. City of Lafayette, 643 F.2d 1188, 1193-94 (5th Cir. Unit A 1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); Bruce v. Riddle, 631 F.2d 272, 279 (4th Cir.1980); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 613-14 (8th Cir.1980). Chief Judge Brieant of the Southern District of New York similarly concluded that local legislators were entitled to immunity, Dusanenko v. Maloney, 560 F.Supp. 822, 827 (S.D.N.Y.1983), and although we affirmed, see 726 F.2d 82 (2d Cir.1984), our affirmance was based on an alternate ground. Id. at 84. We agree, however, with Chief Judge Brieant's view, as expressed in his thorough and scholarly review of the problem, that there is " 'no material distinction between the need for insulating legislative decision making at the state or regional level, and a corresponding need at the municipal level.' " Dusanenko, 560 F.Supp. at 826 (citation omitted).
 
 
 12
 The fallacy in the town's argument on appeal lies in its assumption that the absolute legislative immunity of the town councilmen applies when the suit is brought against them in their official capacities.
 
 
 13
 As the Supreme Court explained in Monell, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent", 436 U.S. at 690 n. 55, 98 S.Ct. at 2036 n. 55. In Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985), the Court explained further the difference between individual-capacity and official-capacity suits:
 
 
 14
 [An official capacity suit] is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
 
 
 15
 On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. When it comes to defenses in liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.
 
 
 16
 Id. (emphasis added; footnotes and citations omitted).
 
 
 17
 Owen v. Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), a case involving qualified immunity, is instructive. Owen brought a § 1983 claim against a municipality and its officials in their official capacities, claiming that he was discharged from his position as police chief in violation of his constitutional rights. In the initial paragraph of Owen, Justice Brennan interpreted his own opinion in Monell as having rejected any claim by a municipality to absolute immunity; he then addressed the issue of whether local governments "should be afforded some form of official immunity in § 1983 suits". Owen, 445 U.S. at 624, 100 S.Ct. at 1402. The Court explained that the immunities historically granted other government actors in § 1983 actions had not been available to municipal corporations:
 
 
 18
 In each of [the cases where we found government officials to be immune,] our finding of § 1983 immunity "was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." Imbler v. Pachtman, [424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976) ]. Where the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity. But there is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded the city of Independence by the Court of Appeals.
 
 
 19
 Id. 445 U.S. at 638, 100 S.Ct. at 1409 (emphasis added).
 
 
 20
 The Court concluded that the municipality could not assert a defense of qualified immunity, reasoning that because it had recognized an absolute or qualified immunity for most governmental officials, granting immunity to the municipality itself might leave the injured party without a remedy, and thereby thwart the intent of congress. Id. at 651, 100 S.Ct. at 1415. In support of its conclusion, the Court noted that denying municipalities immunity for unlawful legislative actions would further the remedial purposes of § 1983, and would deter against future federal violations. Id. at 651-52, 100 S.Ct. at 1415-16. The Court held that whatever immunity municipalities may have enjoyed at common law was "obviously abrogated" by the enactment of § 1983:
 
 
 21
 By including municipalities within the class of "persons" subject to liability for violations of the Federal Constitution and laws, Congress--the supreme sovereign on matters of federal law--abolished whatever vestige of the State's sovereign immunity the municipality possessed.
 
 
 22
 Id. at 647-48, 100 S.Ct. at 1413-14. The Court further stated that:
 
 
 23
 [i]t hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby. Indeed, Congress enacted § 1983 precisely to provide a remedy for such abuses of official power. See Monroe v. Pape, 365 U.S. at 171-172 [81 S.Ct. at 475-76] * * * Elemental notions of fairness dictate that one who causes a loss should bear the loss.
 
 
 24
 Id. at 445 U.S. at 654, 100 S.Ct. at 1417.
 
 
 25
 Following Owen, many courts have held that municipalities are not immune from liability under § 1983 for actions taken in a legislative capacity. See, e.g., W.D.D., Inc. v. Thornbury Township, 839 F.2d 151, 154 n. 3 (3d Cir.) ("[a]s a municipal corporation, the Township * * * cannot make a claim of immunity under the law governing § 1983 suits"), cert. denied, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988), vacated on other grounds, 850 F.2d 170 (3d Cir.1988); Blackburn v. Snow, 771 F.2d 556, 571 n. 13 (1st Cir.1985) ("[u]nlike individual defendants, local governmental entities may not interpose the defense of immunity [in a § 1983 action]"); Finkelstein v. Barthelemy, 678 F.Supp. 1255, 1261 (E.D.La.1988) ("[a]s to a defendant municipality, however, there can be no immunity defense"); Manganella v. Keyes, 613 F.Supp. 795, 797 (D.Conn.1985) ("neither a tradition of immunity nor policy considerations justify a qualified immunity for municipalities and local governments under § 1983"); Dusanenko v. Maloney, 560 F.Supp. at 830 (rejecting the Town of Clarkstown's claim for section 1983 immunity from suit); and Reed v. Shorewood, 704 F.2d 943, 953 (7th Cir.1983) (municipality was denied absolute legislative immunity despite its applicability to municipal policymakers).
 
 
 26
 Agreeing with these authorities, we hold that there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983.
 
 
 27
 The town seeks to avoid this clear inference from Monell and Owen by arguing that while a municipality may not have any immunities available to it in other contexts, liability stemming from municipal legislation should be treated differently. Its primary argument in this connection rests on a claimed state-law privilege of Connecticut legislators against being examined as to their motives in legislating. Relying on a collection of largely out-dated cases, the town argues that at any trial it would be prevented from calling its own legislators to testify about the alleged retaliatory purpose and motive behind their legislation. See, e.g., McGowan v. Maryland, 366 U.S. 420, 468, 81 S.Ct. 1153, 1158, 6 L.Ed.2d 393 (1961); Sonzinsky v. United States, 300 U.S. 506, 513, 57 S.Ct. 554, 555, 81 L.Ed. 772 (1937); United States v. Des Moines Nav. & Ry. Co., 142 U.S. 510, 544, 12 S.Ct. 308, 317, 35 L.Ed. 1099 (1892); Soon Hing v. Crowley, 113 U.S. 703, 710-11, 5 S.Ct. 730, 734, 28 L.Ed. 1145 (1885); County of Los Angeles v. Superior Court, 13 Cal.3d 721, 119 Cal.Rptr. 631-32, 634, 636, 532 P.2d 495-96, 498, 500 (1975); Litchfield v. Bridgeport, 103 Conn. 565, 131 A. 560 (1925); State ex rel. Miller v. Baxter, 171 Wis. 193, 176 N.W. 770 (1920); People ex rel. Tyng v. Prendergast, 164 N.Y.S. 1042, 1050 (N.Y.Sup.Ct.1916), aff'd, 221 N.Y. 659, 117 N.E. 1082 (1917); Amboy v. Illinois C. Ry. Co., 236 Ill. 236, 86 N.E. 238 (1908); State ex rel. Judgson v. Commissioners of Fairfield County, 68 Conn. 16, 35 A. 801 (1896); Bartlett v. Kinsley, 15 Conn. 327, 333-34 (1843).
 
 
 28
 The town's assumption that this legislator's privilege requires municipal immunity from damages in a suit under § 1983 founders on two rocks: (1) the supremacy clause of the constitution, U.S. Const. art. VI, cl. 2, and (2) the related principle that as a matter of statutory construction, immunity from § 1983 liability is ultimately a matter of federal, not state, law. Howlett v. Rose, 496 U.S. 356, 375-76, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990). Developments in federal law over the last 30 years have tied the constitutionality of many types of municipal legislation directly to the purpose and motive of the legislators. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) ("the [municipality]'s purpose is the controlling consideration" in determining whether a law regulating speech is content neutral for the first amendment); Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 871, 102 S.Ct. 2799, 2810, 73 L.Ed.2d 435 (1982) (whether school board's removal of books from school libraries violated first amendment rights depended upon the motivation behind its actions); Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) ("[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"); and Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (law challenged under Establishment Clause must have at minimum a "secular legislative purpose"). The demands of constitutional litigation have therefore overridden any earlier notions as to the presumed motive or purpose of local legislation.
 
 
 29
 We have considered the town's other arguments and find them to be without merit.
 
 IV. CONCLUSION
 
 30
 Since the town's claim to absolute legislative immunity from the consequences of its legislative act in abolishing Goldberg's position as supernumerary police officer is without merit, we affirm the order of the district court.