# Oldham v. Mayor and Aldermen of Birmingham.

*Action of Assumpsit against Municipal Corporation.*

1. *Municipal corporation; right to abolish an office created by ordinance.*—The election of one to a municipal office created by ordinance and his acceptance of it is not an engagement or contract between the corporation and such officer; and the municipal corporation can, during the tenure of the officer, unless restrained by its charter, abolish such office, and thereby deprive him of the salary previously incident thereto.

2. *Same; right to abolish office created by ordinance not affected by act of legislature establishing board of police commissioners.*—Where the charter of a municipality confers on the Mayor and Aldermen the power "to maintain a police force of such officers and patrolmen as they may deem necessary," and "to remove and discharge any of its officers and employés at pleasure," and the code of such municipality, adopted by ordinance, provides that the Board of Mayor and Aldermen shall elect "such number of policemen as the board may see fit, to serve at the will of the board for one year, or until their successors are elected and qualified," the Board of Mayor and Aldermen can, after creating the office of sergeant of police and the appointment and

acceptance of an officer therefor, abolish such office by an ordinance, and thereby deprive the then incumbent of his salary; and the fact that prior to the passage of the ordinance abolishing the office of sergeant of police there was established by an act of the legislature a Board of Commissioners of Police for said municipality, who were empowered to appoint such police officers "as is or may be prescribed by city ordinance," and to exercise full control of the police force "in conformity to existing laws or ordinances, and such as may be made in future applicable to the subject," and were also given power of removal for non-performance of duty, and in the discharge of their duties the police commissioners appointed a sergeant of police, does not in any way impair or destroy the right of the Board of Mayor and Aldermen to abolish such office; and upon the abolishment thereof the salary of the person filling such office by the appointment of the police commissioners ceases.

3.  *Same; same; limitation of term of office.*—Where the charter of a municipal corporation authorizes the Board of Mayor and Aldermen, as the governing body of the city, to maintain such police force as they see fit, and the city code fixes the terms of the police officers "at the will of the board for one year, or until their successors are elected and qualified," the term of office continues only so long as the Board of Mayor and Aldermen wills it shall continue, not longer than a year; and the provision in an act of the legislature establishing a board of police commissioners for said city, that the salaries of its police officers and policemen "shall not be increased or diminished during their respective terms," does not entitle a police officer to his salary, after his office is abolished, to the end of the year for which he was appointed by the police commissioners, since his "term" ended upon the abolishment of the office.

4.  *Same; right to abolish office not affected by statutory prohibition to remove officer except for cause.*—The provision of an act of the legislature establishing a board of police commissioners for a city, which prohibits the removal of policemen by the police commissioners, except for cause after due trial, does not affect the exercise by such city of the power to create and abolish offices.

5.  *Repeal of statutes by implication.*—Where there is no conflict or inconsistency between two acts, and both may be executed independently without interference with the other, the question of the repeal by implication can not arise.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellant, J. S. Oldham, against the Mayor and Aldermen of Birmingham to recover an amount alleged to be due him as his salary as sergeant of police of the said city. The facts of the case are sufficiently stated in the opinion. The cause was

[Oldham v. Mayor and Aldermen of Birmingham.]

tried by the court without the intervention of a jury, and judgment was rendered for the defendant, to the rendition of which judgment the plaintiff duly excepted. The plaintiff prosecutes the present appeal, and assigns as error the rendition of this judgment.

CABANISS & WEAKLEY, for appellant.

1.  "Repeals by implication are not favored in law, but a subsequent statute revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. And though a subsequent statute be not repugnant in its provisions to a former one, yet if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statute."—86 Amer. Dec. note, p. 193, and authorities there cited; 3 Brick. Dig., 750, § 49; *Mersereau v. Mersereau Co.*, 26 Atl. Rep. 682.

2.  Remedial statutes are liberally construed in aid of the purpose and intent of the legislature, and to avoid "subtle inventions and evasions for continuance of the mischief."—*Huffman v. State*, 29 Ala. 40; Endlich on Interpretation of Statutes, § 107, p. 141; *Gregory v. Mayor*, 40 N. Y. 273.

3.  "Since municipal corporations can exist only by virtue of express legislative enactment creating or authorizing the creation of the corporate body, they possess no powers or faculties. not conferred upon them either expressly or by fair implication by the law which creates them, or by other statutes applicable to them."—15 Amer. & Eng. Encyc. of Law, p. 1039.

4.  The legislature of the State, which has unlimited control over the municipal corporations which it creates, having indicated its purpose in the Police Commissioners Act to establish a new system of police for Birmingham, with protection to salaries and against removal, except for cause after trial, it is incompetent for the mayor and aldermen during the term of a police sergeant, at least, to indirectly remove him from office or take away all salary, resorting to the indirect method of abolishing the office.—2 Story on Con. of U. S., §§ 1628 *et seq.*; *Fant v. Gibbs*, 54 Miss. 396; *People v. DuBois*, 23 Ill. 547; *Com. v. Gamble*, 62 Pa. St. 343; s. c. 1 Amer. Rep.

422; *Com. v. Mann*, 5 Watts & Serg. (Pa.) 403 ; *Reid v. Smoulter*, 128 Pa. St. 324 : *Guldon v. Schuyskill Co.*, 24 Atl. Rep. (Pa.) 171; *Board of Commissioners v. Burns* (Wy.) 29 Pac. Rep. 894, s. c. 30 Pac. Rep. 415 ; *Lowe v. Commonwealth*, 3 Metc. (Ky. ) 237 ; *DeSoto Co. v. Westbrook*, 1 So. Rep. (Miss.) 352 ; *People v. Med. College*, 10 Abbott's New Cases 122; s. c. 62 How. Pr. 220 ; *State v. City of Trenton*, 13 Atl. Rep. (N. J.) 228 ; *Jemison v. Adams Co.*, 130 Ill. 564 ; *Cook County v. Sennott*, 136 Ill. 314 ; *Perkins v. Corbin*, 45 Ala. 103; *Ex parte Roundtree*, 51 Ala. 42 ; *Ex parte Lambert*, 52 Ala. 79 ; *Ex parte Lusk*, 82 Ala. 519, 2 So. Rep. 140 ; *State v. Leonard*, 86 Tenn. 485, discrediting *State v. Gains*, 2 Lea 316 ; *Texarkana v. Weeks*, (Ark.) 6 S. W. Rep. 504 ; *State v. Twitchell*, (Wash.) 31 Pac. Rep. 19.

5.   After the passage of the Police Commission Act and the appointment of the commissioners thereunder, the power of the board of mayor and aldermen over "the appointment and retention in office" of police officers was gone.—*Fox v. McDonald*, 101 Ala. 51, 13 So. Rep. 416.   This resulted because the said act necessarily repealed all provisions, whether in the charter or ordinances of the city, to the effect that such officers held at the will of the mayor and aldermen.   The new tenure was necessarily inconsistent with any such holding at the will of the mayor and aldermen.

5.   The new charter or an amendment thereto in the form of an act expressly amending the charter, or in the form of an independent statute, relating to the municipality, only repeals ordinances to the extent that the new provisions are inconsistent therewith.—1 Dill. Munic. Corp., § 85, p. 141 ; *Trustees of Erie Academy v. Erie*, 31 Pa. St. 515 ; *Chamberlain v. Evansville*, 77 Ind. 542; *State v. Natal*, 39 La. Ann. 439.   The Police Commission Act repealed so much of the city ordinances as fixed the tenure of police offices, at the will of the board, but it did not affect the "term" or time thereof, which was established at one year from January 1st to January 1st.— Authorities *supra*.

Hawkins & Selheimer, *contra*. · 1. All offices, except when legislative authority is limited or restricted by constitutional provisions, are subject to the will of the legislature.   There is, with the above exception, no vested

[Oldham v. Mayor and Aldermen of Birmingham.]

right to an office or its salary. The office may be abol-
ished. The mode of appointment may be changed. The
length of time of official existence may be shortened.
The compensation for official services may be dimin-
ished.—*Lane v. Kolb*, 92 Ala. 640, 9 So. Rep. 873 ; *Per-
kins v. Corbin*, 45 Ala. 103 ; *Benford v. Gibson*, 15 Ala.
521 ; *Ex parte Lambert*, 52 Ala. 79 ; *Butler v. Pennsylvania*,
10 How. (U. S.) 402 ; *Taft v. Adams*, 3 Gray (Mass.)
126 ; *Com. v. Bacon*, 6 Serg. & R. (Pa.) 322 ; *Conner v.
Mayor*, 5 N. Y. 285 ; *Barker v. Pittsburg*, 4 Pa. St. 49 ;
*Wilcox v. Rodman*, 46 Mo. 322 ; *Bryan v. Cattell*, 15 Iowa
538 ; *Ford v. State Harbor Commissioners*, 81 Cal. 19 ;
*State v. Hyde*, 13 L. R. A. (Ind.) 81 ; *Hall v. State*, 39
Wis. 79.

2. So, also, a municipal corporation may, unless res-
trained by charter, or by some legislative or constitu-
tional provision, abolish an office created by ordinance,
before the expiration of the incumbent's term.—Dill.
Mun. Corp., § 231 *et seq.* and notes ; *Chicago v. Edwards*, 58
Ill. 252 ; *Waldraven v. Memphis*, 4 Caldw. (Tenn.) 431 ;
*Primm v. City of Carondelet*, 23 Mo. 22 ; *Augusta v. Swee-
ney*, 44 Ga. 463.

3. The power of the legislature to abolish an office
created by it is supreme, in the absence of express inhi-
bitions in the State constitution. So, also, since the
power to abolish an office is a necessary incident of, and
inherent in, the power to create the office, the power of
municipal authorities to abolish an office created by
them is supreme, unless limited by express legislative or
constitutional provisions, or by clear and necessary im-
plication.—*Ex parte Lambert*, 52 Ala. 81; *Perkins v. Cor-
bin*, 45 Ala. 103.

4. The power of the Board of Mayor and Aldermen to
abolish entirely the offices of day and night sergeant is
neither taken away nor limited by the provision in the
Police Commission Act prohibiting the diminution of
the salary of the police officers during their term, nor
by the provision impliedly prohibiting their removal
except by the police commissioners after charges pre-
ferred and trial, &c.—*Ford v. State Board of Harbor Com.*,
81 Cal. 19 ; *Perkins v. Corbin*, 45 Ala. 103 ; *Phillips v.
Mayor of New York*, 88 N. Y. 245 ; *Hall v. State*, 39
Wis. 79.

5. The term of office of the appellant was not a fixed

irrevocable period of time, but was "at the will of the board for one year."

6. The grant of power to the police commission in the act creating it, to appoint "such police officers and policemen as are or may be prescribed by city ordinance," does not make such police offices as existed at the time of the passage of the act legislative offices, or place them beyond the power of the municipal authorities to abolish any of them.—*Ford v. Board of Harbor Com.*, 81 Cal. 19.

7. Any contract made by the authorities of a municipal corporation which amounts to a surrender, abrogation or obeyance of their legislative or governmental powers or discretion, is against public policy and void.— *City Council of Montgomery v. Water Co.*, 92 Ala. 363, 9 So. Rep. 399; Dill. Mun. Corp., §§ 97, 458; *Gale v. Kalamazoo*, 23 Mich. 344; *Brimmer v. Boston*, 102 Mass. 19.

8. Where municipal authorites are vested by the legislature with the power to remove or discharge an officer at pleasure, or to shorten the term, an agreement by which an appointment by them is made for a definite period, is void and cannot be enforced.—*Shipman v. State*, 42 Wis. 377.

9. The contract being void and beyond the scope of corporate authority, can not be ratified by the corporate authorities.—Dill. Mun. Corp., § 463 and notes.

10. The court can not inquire into the motives of the board of mayor and aldermen in abolishing the offices of day sergeant and night sergeant, but must presume that it acted in good faith.—Dill. Mun. Corp., § 311; *People ex rel. v. Cregier*, 138 Ill. 414; *Hudson v. Denver*, 20 Pac. Rep. (Col) 329; *Carter v. Durango*, 16 Col. 534, 27 Pac. Rep. 1057.

HARALSON, J.—This is an action of assumpsit by Jno. S. Oldham, the appellant, against the Mayor and Aldermen of Birmingham, a municipal corporation, to recover the salary claimed by him as attaching to the office of Sergeant of Police for said city, which accrued to him from and after the 21st of June, 1893, and which was payable, as alleged, semi-monthly. The facts in the case are undisputed. It was tried on an agreed statement subject to legal objections. The trial was by the court, without the intervention of a jury, and the judg-

ment being for the defendant, on exception reserved to the conclusion and judgment of the court, an appeal is here prosecuted to reverse that judgment.

The legislature, at its session of 1890–91, established a new charter for the city of Birmingham.—Acts 1890–91, p. 114. Under this charter, the corporate powers of the city were vested in, and to be exercised by, a mayor and ten aldermen, who constituted the governing body, called the Board of Mayor and Aldermen, to be elected by the people on the first Tuesday in December, biennially. Prior to 1893, this board had power and control over the police force of the city.

On December 12th, 1892, the act of the legislature, entitled "An act to establish a Board of Commissioners of Police for the city of Birmingham, Alabama," was approved, by which act it was made the duty of this board to appoint such police officers and policemen as were or might be prescribed by the city ordinance.

On the 12th March, 1893, the police commissioners, having been duly appointed, and qualified under said act, proceeding thereunder, elected the police for said city consisting of a chief of police, a night captain, a day and night sergeant and twenty-six patrolmen, the day sergeant so elected being the plaintiff, Jno. S. Oldham. These were the police officers and policemen, at that time authorized by city ordinance.

The Board of Mayor and Aldermen of the city denied the right of said commissioners to elect a police force, and insisted that the then incumbents of police offices had the right to serve during the whole of 1893, (having theretofore been appointed by the city for the year,) and refused to recognize the rights of the appointees of the police commission (including the plaintiff) ; and the then incumbent of the office refused to vacate and yield it to plaintiff. Other appointees were in a like category. Litigation ensued between the appointees and the city, which was finally, on the 20th June, 1893, decided against the city in the case of *Fox v. McDonald* in this court.—101 Ala. 51.

On the 21st of June, 1893, the Board of Mayor and Aldermen adopted the following ordinance : "Be it ordained by the Mayor and Aldermen of Birmingham that the offices of day and night sergeants are hereby abolished ; that until the 1st day of January, 1894, the police

department shall consist of one chief, one night captain and twenty-six patrolmen."

The plaintiff reported for duty to the chief of police, at 12 o'clock on the night of the 21st of June, 1893, who informed him of the passage of said ordinance to abolish said office, adopted that night, and told them to await further action until they could, on the following day, consult their counsel, and until he could see the police commissioners; that on the following day,—June 22, 1893,—they conferred with their counsel and the police commissioners, and plaintiff went on duty at six o'clock A. M., June 23d, 1893, and has since been performing his duties as day sergeant,—all of which was done under the direction of the chief of police. There was no dispute, as to the time plaintiff served, or the value of the compensation, or as to his having made proper application to the Mayor and Aldermen to have his name put on the pay roll of the city, or to his having demanded, before suit brought, what he alleged to be due him. The city authorities refused to recognize him as one of the city police force, denied that they owed him anything, and refused to pay him.

The sole question for review, as presented by plaintiff's counsel is, "Did the Mayor and Aldermen of Birmingham have the power, on June 21, 1893, to abolish the office of police sergeant held by plaintiff, and thereby deprive him of his salary during his term; or can the ordinance of that date, be accorded the effect of taking away said salary?"

(1.)    Mr. Dillon states the rule to be, that "A municipal corporation *may*, unless restrained by charter, *abolish an office created by ordinance*, and may also, unless the employment is in the nature of a contract, *reduce or otherwise regulate the salaries and fees* of its officers, according to its views of expediency and right." (Italics his.) 1 Dillon on Munic. Corp., §§ 231, 232; 19 Amer. & Eng. Encyc. of Law, pp. 526 and 555.

(2.)    It seems to be well settled, generally, that the power to create an office includes the power to destroy or abolish it, and that whenever the people in convention, or through the legislature, clothe any department of the government, or any of its boards, or officers, or municipalities with power, at discretion, to create an office, they clothe the body thus authorized, in the absence of a de-

claration of purpose to the contrary, with like power to abolish the same office.—*Benford v. Gibson*, 15 Ala. 523; *Ex parte Screws*, 49 Ala. 65; *Ex parte Lusk*, 82 Ala. 522; *People v. Jewett*, 6 Cal. 291; *People v. Squires*, 14 Cal. 13; *Ford v. Harbor Comm'rs.*, 81 Cal. 19; *Phillips v. Mayor*, 88 N. Y. 245; *State v. Kalb*, 50 Wis. 178; *State v. Smith*, 65 N. C. 369; 19 Amer. and Eng. Encyc. of Law, pp. 526 and 555, and authorities cited in notes.

(3.)   There is in this State no constitutional inhibition to the abolition of offices created by statute, nor any protection extended to salaries attaching to such offices. Protection is extended only to such officers as are named in the constitution, whose offices cannot be abolished, and whose compensation is forbidden to be diminished during their official terms.—*Perkins v. Corbin*, 45 Ala. 103; *Ex parte Lambert*, 52 Ala. 81.

(4.)   The election of one to a municipal office and his acceptance of it, can not be regarded as an engagement or contract between the corporation and himself. He may resign at pleasure, and so his office may be abolished, or his compensation reduced, or taken away altogether.   He accepts the trust, with full knowledge of the power of the legislature or the municipality over the office and its emoluments.—*University v. Walden*, 15 Ala. 657; *Commonwealth v. Bacon*, 6 Ser. & Rawle, 322; Thorpe on Pub. Officers, § § 443, 444, 446, 447.

5.   If any thing were needed, in addition to the clear and repeated utterances of this court on this subject ,in the cases we have cited, the Supreme Court of the United States has given expression to language, by Justice Daniel, so applicable to this case, we venture to quote it :   "The contracts," says the court, "designed to be protected by the tenth section of the first article of that instrument, are contracts of which *perfect rights, certain, definite, fixed private rights* of property are vested.   These are clearly distinguishable from measures or engagements adopted or undertaken by the body politic or State government for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied or discontinued as the public good shall require. The selection of officers, who are nothing more than agents for the effectuating of such public purposes, is matter of public convenience or necessity, and so too are the periods for the appointment of such agents; but

neither the one nor the other of these arrangements can constitute any obligation to continue such agents, or to re-appoint them, after the measures which brought them into being shall have been abrogated as even detrimental to the well being of the public. The promised compensation for services performed and accepted, during the continuance of the particular agency, may undoubtedly be claimed, both upon principles of compact and equity; but to insist beyond this on the perpetuation of a public policy, either useless or detrimental, and upon a reward for acts neither desired nor performed, would appear to be reconcilable with neither common justice nor common sense. The establishment of such a principle would arrest, necessarily, every thing like progress in government; or if changes should be ventured upon, the government would have to become one great pension establishment in which to quarter a host of sinecures." *Butler v. Penn*, 10 How. 402; *U. S. v. Hartwell*, 6 Wal. 385; *U. S. v. Mitchell*, 109 U. S. 146.

6. Let the foregoing principles be applied to the facts of this case, as we find them in the record.

The charter of the city of Birmingham confers on the Mayor and Aldermen the power to "appoint such officers as they may see fit and think necessary for the good government of the city, * * * and may remove and discharge any of its officers and employés at pleasure" (§ 18); and "to appoint and regulate night and day watchmen, police, patrol and captains thereof, and to maintain a police force of such officers and patrolmen as they may deem necessary."—Acts 1890–91, p. 114, (§ 21 sub-div. 7).

Section 14 of the code of the city of Birmingham provides that "the Board [Mayor and Aldermen], as soon as practicable after its organization, shall proceed to elect for the ensuing year the following officers * * * * a clerk (and other designated officers), and *such number of policemen as the board may see fit, to serve at the will of the board for one year, or until their successors are elected and qualified*." (Italics are ours.)

Section 46 provides, that the officers of the city, in addition to Mayor and Aldermen, shall, until changed by the Board, be as follows—(specifying them)—"and such number of policemen * * as the Board may determine, all of whom are to be elected annually by the

Board, *to serve at the will of the board for one year*, or until their successors are elected and qualified, beginning on the first of January of each and every year.''

On the 21 day of June, 1893, the Board of Mayor and Aldermen adopted the ordinance, which we have quoted above, abolishing the office of day and night sergeant.

The powers of the Board of Police Commissioners are enumerated in sections 4 and 5 of the act creating them. These powers are scant, and relate entirely to the control of the police of the city. It is made their duty "to appoint a chief of police and such other police officers and policemen as is or may be prescribed by city ordinance, * * * * and to exercise full directions and control of the officers and members of the police force in conformity to existing laws and ordinances, and such as may be made in the future applicable to the subject." § 4.

Section 5 gives them power to suspend or remove any officer of the police force or any policeman who fails to perform any duty required of him by law or the city ordinances.

7. By these two sections, the power of the Board of Mayor and Aldermen to make the appointment of these officers, as formerly exercised, was revoked, and the power to suspend or remove them was also taken away. But it will be observed, that the power to determine what officers and policemen are necessary for the good government of the city, and to carry out the powers granted in its charter, and the power to create and abolish offices, such as the Mayor and Aldermen theretofore had, was left untouched and as plenary as before.

8. The police commission, as is seen from the act, are authorized to appoint "a chief of police and such other police officers and policemen, *as is or may be prescribed by city ordinance*." They have nothing to do with how large or how small the police force shall be,—whether it shall be, at any time, increased or diminished; have nothing to do with the creation or abolishing of offices, or with the amount of compensation the police officers shall receive, or with the finances of the city, or the city government,—nothing to do, except, to overlook the police force and to see that they do their duty. When it comes to suspending or removing one of them from office, even for a failure to perform his duties, it

must be done, not by ordinance or their creation, but in the manner *as shall be prescribed by city ordinance*. No legislative power at all is given to them, but it is all reserved for the Mayor and Aldermen. The salaries and compensations of these police officers and policemen, as they were before the creation of this police commission, are "to be prescribed by city ordinance, and shall not be increased or diminished during their respective terms." The only difference in the matter of compensation under the new and old order is, that this latter act inhibits the increase or decrease of the salaries during the terms for which these officers were appointed. As for any thing in the act creating this Board, the Mayor and Aldermen are still required, "to maintain a police force of such officers and patrolmen as they may deem necessary," and at such compensation as they may prescribe.

9. The contention of the plaintiff, as stated by his counsel, is, that the legislature indicated its purpose in the Police Commission Act to establish a new system of police for Birmingham with protection to salaries and against removal, except for cause after trial, and it is not competent for the Mayor and Aldermen, during the term of a police sergeant, to indirectly remove him from office or take away all salary, by resorting to the indirect method of abolishing the office.

This claims more than is authorized to be presumed in respect to the action of the city government. We are to presume they did their duty, and acted as they thought was for the good of the city in abolishing said office.

The act inhibiting the diminution of the salary of the police officers is limited in its application to *the term* of the officer, and the inhibition, as to any particular officer, exists only so long as his term of office continues. What then is meant by the word *term* as here employed? The act does not fix the term of office of policemen, or police officers, nor does the charter of the city, nor any legislative act do so; but it is wisely left to the governmental authority of the city to determine the number and to maintain such a police force "as it sees fit," (Charter, §§ 18 and 21); and the city code (§§ 14 and 46) fixes their terms to be, "at the will of the Board [of Mayor and Aldermen], or for one year, or until their successors are elected and qualified." The term, then, continues

only so long as the Board of Mayor and Aldermen wills it shall continue, not longer than a year, if the Board does not will to terminate it sooner, or until a successor is elected and qualified. The provision in the police act against an increase or diminution of salaries can have no application to a case where an office of policeman has been abolished. If the office has been abolished, the incidental and necessary effect is that the incumbent can no longer discharge its duties, for there can be no officer where there is no office, and there can be no salary where there is neither office nor officer.

10. The purpose of the legislature in providing against the removal of policemen by the Board of Police Commissioners, except for cause after due trial, and in a manner to be prescribed by city ordinance, was to prevent injustice and the exercise of an *ex parte*, arbitrary and capricious power, to the injury, perhaps, of a faithful officer, and to give him, at least, an opportunity of having a fair trial before removal.

But this has no application to the exercise of the power by the city to create and abolish offices. The judge of one of our city courts can not be removed for cause, without impeachment after trial, but that does not prevent the legislature from abolishing the court, and thereby deprive the judge of his office and salary.—*Perkins v. Corbin, supra.* Offices are abolished, it may be presumed, without reference to the incumbent or their conduct,—though that might, properly, be a consideration,—but because they are no longer necessary. Such statutory offices are not to be retained for the benefit of those who fill them, but alone for the public good.—*Phillips v. The Mayor,* 88 N. Y., *supra.*

11. A careful consideration of the act creating the police board brings us to the conclusion, that there is nothing in it, in conflict with the power of the Mayor and Aldermen to create and abolish these police offices.

There was no intention of the legislature to substitute the Police Commission Act for the charter of the city in any of its provisions respecting the government of the city, excepting in the particulars pointed out above, to which extent alone, the former is a revision and repeal of the latter, leaving no room for any repeal by implication as contended by appellant. Where there is no conflict or inconsistency between two acts, and both may

[Eufaula National Bank v. Passmore.]

be executed without interference with the other, the question of repeal by implication can not arise.—3 Brick. Dig. 750, § 49; *Iverson v. The State*, 52 Ala. 170.
    Affirmed.