STEPHEN F. WYSE, PROSECUTOR, v. THE BOARD OF POLICE COMMISSIONERS OF NEW JERSEY.

Submitted March 20, 1902—Decided June 9, 1902.

1. A municipal board invested with authority to make rules and regulations for the government of the police department of a city, may lawfully adopt rules regulating the removal of dead bodies from the streets and public places, by delivery to friends or relatives claiming them, or to the morgue, where one is provided by law for that purpose; such power is derived from the authority granted to make police regulations.

2. Where the authority granted is limited to the making of rules and regulations not in conflict with the constitution and laws of the state, rules formulated by the municipal board to promote the health or general welfare of the city, when their validity is challenged, will receive a favorable construction and will be sustained by the court unless their invalidity is made to clearly appear.

3. Where rules were made by such board regulating the removal of unknown dead from the public streets, which rules were silent as to giving notice to a coroner of the finding of such dead, it was held on review that such rules were not invalid as in conflict with a statute requiring the police officers of any city to give notice to a coroner of the finding of all unknown dead, the court holding that the rules were intended for the protection of the public health and comfort, and not for the purpose of interfering with the requirements of the statute as to the mode of their enforcement.

---

On *certiorari.*

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutor, *John J. Mulvaney.*

For the defendant, *George L. Record.*

The opinion of the court was delivered by

HENDRICKSON, J.   The prosecutor, who is one of the coroners of the county of Hudson, seeks to have certain rules of the defendant board set aside as infringing upon his rights and duties as such officer, touching the control and disposal of the bodies of those found within his jurisdiction who have met with violent, sudden or casual deaths.

The rules in question, as appears by the return to the writ, were adopted for the government of the Jersey City police department November 16th, 1900, and read as follows:

### "RULE 56.

"Dead bodies of persons found in the water will be brought to the shore and removed to. the morgue or delivered to the friends or relatives as soon as practicable.   Bodies found upon the streets or in public places will be treated in the same manner.

### "RULE 57.

"All unknown or unclaimed bodies must be sent to the morgue, accompanied by an officer, who will witness the searching of the body and report to his station house a full description of the deceased, and also any further information that may lead to identity.

### "RULE 58.

"In all cases of violent or sudden deaths the county physician will be notified in writing of the fact, stating the whereabouts of the remains, as in such cases the body cannot be removed from the county until the county physician has given permission for its removal.

"RULE 251.

*"School of Instructions.*

"The officers, before dismissed from the school of instructions, are expected to be able to answer intelligently the following questions:

"*Q.* What disposition is made of the dead bodies of persons unknown?

"*A.* Sent to the morgue.

"*Q.* When dead bodies found in public places are known, what disposition is made of them?

"*A.* Given to relatives or friends of the deceased.

"*Q.* Who is the custodian of property found on the unknown dead?

"*A.* The morgue-keeper.

"*Q.* Who is the proper person to be notified in all cases of violent and sudden deaths?

"*A.* The county physician."

The defendant board is organized and derives its general authority under section 21 of "An act concerning the government of cities of this state," approved April 6th, 1889. *Gen. Stat.*, *p.* 734. Under the above act the rights and powers then existing in the board of police commissioners in Jersey City under the previous charter (*Pamph. L.* 1871, *p.* 1094) became invested in the defendant board.

Under the ninety-ninth section of the charter of 1871 power is conferred upon the board to establish and enforce such regulations as they may deem necessary for the protection of the health within the city, and that shall tend to preserve peace, good order and decency within said city, provided they are not inconsistent with the laws of this state. So that the material question which arises in this case is whether the rules in question are inconsistent with the laws of this state relating to the rights and duties of coroners. In order to answer this ques-

tion an examination of the state of the law on the subject
would seem to be necessary.

The prosecutor relies largely upon the act respecting cor-
oners (*Gen. Stat., p.* 897), section 5 of which makes it the
duty of the coroner, or a justice of the peace in his absence,
on being informed of the violent, sudden or casual death of
any person within his county, immediately to proceed and
view the body, &c., as directed in the act. It must be observed,
however, that under an act respecting county physicians, ap-
proved April 21st, 1876, and the supplements thereto (*Gen.
Stat., pp.* 1018, 1019, 1020), in certain counties of the state,
where a county physician has been elected under the provi-
sions of said act, such county physician has the exclusive right
and power to make all views and inquiries theretofore made by
coroners and justices of the peace, with the purpose of ascer-
taining whether an inquest should be held; and no precept for
a jury of inquest can be issued by any justice or coroner except
by the written request of such county physician, who is made
a sworn officer under the act. There is a section giving power
to the coroner or justice to act in case of a vacancy in the office
of the county physician from death, resignation or failure to
elect, or in case such county physician's presence cannot be
obtained within six hours after written notice given to him by
the coroner. And it is further provided that no coroner in
such county shall be entitled to receive any fees for viewing
the body of any deceased person unless such view was made on
the written order of the county physician.

It must also be observed that by an act relative to morgues
and morgue-keepers, approved March 4th, 1879, and the supple-
ments thereto (*Gen. Stat., pp.* 2099, 2100), it is made unlaw-
ful, in counties where there is a county physician and morgue-
keeper regularly appointed, for a coroner to take in charge and
keep any dead body not known or claimed at the time of find-
ing, and it is made the duty of such coroner to deliver such
body to the keeper of the morgue of the district. It is de-
clared to be the duty of the coroner to notify the county phy-
sician, who himself or by his deputy shall view the body, and
if an inquest is deemed necessary the same shall be held by

the coroner, but in either case the body is to be buried by the morgue-keeper.

It is admitted in the briefs that the above statutes relating to county physicians and to morgues and morgue-keepers have application in the city of Jersey City. In this state of the law are the rules in question invalid because in conflict with the statutes referred to? Interpreting these rules in the light of the various provisions of the statutes, it would seem that there is no necessary conflict between the former and the latter. On behalf of the prosecutor the only criticism made as to the propriety of rules 56 or 57 is that they direct the removal to the morgue of unknown dead, without directing notice to be first given to the coroner. As to rule 58, the criticism is that in all cases of violent or sudden deaths the county physician shall be notified by the police, without any reference to the giving of notice to the coroner. The contention is that the coroner should be first notified in the case of either of the classes of persons found dead; but the only statutory requirement pointed to is paragraph 11 of the Morgue acts, *supra,* which declares it to be the duty of the chief of police or any police on duty in any city in which such morgue exists to notify the coroner, who shall at once notify the keeper of the nearest morgue of the finding of all unknown or unclaimed dead in said city.

The exact pertinence or utility of such a notice to the coroner, since his power to make views or inquiries in all such cases has been transferred to the county physician, except in case of a vacancy in the latter's office, is not clear. But even granting that in the case of the unknown dead the duty to notify the coroner is laid upon the police officers of the city, does the mere absence of a requirement to give such notice render rules 56 and 57 invalid? They do not forbid the giving of such notice. They are entirely silent as to the matter of notifying anyone. In interpreting these rules we must look at them from the standpoint of the board of commissioners, not as formulating a matter of legal procedure, but as making regulations, general in their character, to promote the health,

comfort and convenience of a crowded city. Such a power is held to arise from authority to make police regulations. 1 *Dill. Mun. Corp.* (*4th ed.*) 372, and *note* 1; *Weil* v. *Ricord,* 9 *C. E. Gr.* 169.

We must also have regard to the rule that enactments of this character are given a reasonable construction, and to the further rule that where such enactments are made by a municipal body having jurisdiction over the subject-matter, every intendment and presumption will be made in favor of their validity. 17 *Am. & Eng. Encycl. L.* 264; *Road Commission* v. *Harrington,* 26 *Vroom* 327; *Atlantic City, &c.,* v. *Consumers' Water Co.,* 17 *Stew. Eq.* 427.

Applying these principles, we must conclude that the object of these rules was to secure the early and orderly removal from the streets and public places of the city of the dead bodies of the unfortunate which might otherwise soon become a menace to the health and comfort of the people; and that in giving general directions it was not intended that in matters of detail the police officers were to disregard any general statute regulating their conduct.

These views apply also to the construction of rule 58, the only difference being that in the latter it was directed that in all cases of violent or sudden deaths the county physician should be notified. The reason is also stated why the notice should be sent, and that is because the body could not be removed from the county without the permit of the county physician. This shows that the notice was given in the interest of the city and not with the view of preventing the officers from giving notice to other officials where duty might require.

We think there appears to be no necessary antagonism between these rules and the existing laws. The statute requiring police officers to give notice to the coroner in certain cases provides a penalty for disobedience which may be enforced. We must assume that the rules in question were adopted subject to any regulations that arise under existing statutes. The result is that the prosecutor has failed to clearly show the invalidity of the proceedings of the defendant board, and they are for this reason affirmed, with costs.