MICHAEL J. DURKIN ET AL., PROSECUTORS, v. BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEWARK, DEFENDANT.

Submitted July 6, 1916—Decided December 7, 1916.

1. The act of March 24th, 1885 (*Pamph. L., p.* 130), prescribing that certain officers and men employed by municipal authority in the fire department of any city shall hold their respective offices during good behavior, efficiency and residence in such city, does not prohibit the reduction in rank of such officials for reasons of economy in the service.

2. In section 1 of *Pamph. L.* 1906, *p.* 429 (*Comp. Stat., p.* 2402, *pl.* 298), which provides, among other things, that battalion chiefs shall hold their office or employment during good behavior and shall be removed for cause after a hearing or opportunity therefor is afforded, the word "cause" in the statute does not necessarily mean one of the causes designated in *Pamph. L.* 1885, *p.* 130. Consequently, in a city having a fire department organized under the authority of *Pamph. L.* 1885, *p.* 326, an official in the fire department may be reduced in rank in the interests of the economical administration of the department, when done in good faith to promote the efficiency of the service, although it may displace some men whose positions are secured to them during good behavior.

3. Section 24 of the Civil Service law (*Comp. Stat., p.* 3804) does not tend to protect officers in the police department of a municipality against reduction in rank where such reduction was not the result of discrimination because of their religious or political opinions or affiliation, but was made in the interest of economy in the affairs of government.

On *certiorari*.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutors, *Frank E. Bradner*.

For the defendant, *Harry Kalisch*.

The opinion of the court was delivered by

KALISCH, J. The five prosecutors, Michael J. Durkin, Thomas S. Reilly, Charles S. Storch, Cornelius Smith and

James Fagan, Jr., are members of the fire department of the city of Newark.

Each of the prosecutors was reduced, by the board of fire commissioners of the city of Newark, from the rank and salary of a battalion chief to the rank and salary of a captain.

The prosecutors, severally, sued out writs of *certiorari* to review the legality of the action of the board, and, as the same legal question is presented by these writs, the cases were consolidated and argued together.

The facts are briefly these: In June, 1914, the prosecutors, who were captains in the fire department, were made battalion chiefs. The city of Newark then contained five battalion districts under the supervision of four battalion chiefs, there being a vacancy in one of the districts. Each battalion chief was equipped, at the expense of the municipality, with a horse and gig at an initial cost of about $550. The upkeep of these equipments was the source of considerable expense. The promotion of the prosecutors carried with it an increase of $400 in the salary of each, annually. No new battalion districts were created and no equipments had been furnished to the promoted men. The effect of the advance of the prosecutors to battalion chiefs was to increase the force of the latter from five to nine for the five battalion districts. To carve out of the old division new battalion districts, and to provide the proper equipment for the new battalion chiefs, and to maintain the battalion stations properly, would require the expenditure of large sums of money.

It further appeared that the affairs of the fire department had been conducted with efficiency at the time, when, in 1914, the five battalion districts were under the supervision of the four battalion chiefs.

Confronted with this situation, the board of fire commissioners of 1915, on the 11th day of February, 1915, notified each of the prosecutors to appear before the board on February 24th, 1915, and show cause why he should not be reduced to the rank of captain for reasons of economy. The prosecutors, with counsel, appeared before the board at the time stated and asked leave to file written answers, which

privilege was accorded them. At the request of their counsel a further continuance was granted them, and they filed their several answers on March 3d, 1915, in which they set up that their reduction to the rank of captain for reasons of economy was not in the nature of a charge against them in compliance with the Civil Service law, and that the board was without power to make the reduction in rank on grounds of economy, and furthermore that no such grounds existed. The prosecutors offered no testimony before the board and were content to rest upon their answers, whereupon the board passed the following resolution: "*Resolved,* That for reasons of economy Battalion Chiefs Thomas S. Reilly, Charles C. Storch, James Fagan, Jr., Michael J. Durkin and Cornelius Smith, be and are hereby reduced to the rank and salary of captain, beginning March 16th, 1915. Adopted March 3d, 1915."

Nine reasons have been assigned by counsel for the prosecutors why the resolution demoting the prosecutors should be set aside, but only two are relied on and presented in the brief for our consideration. The two reasons relied on and argued in the brief embody the following propositions: Firstly, that no member of the fire department can be reduced in rank except for cause as specified by the statutes, and only after a trial upon specific charges; secondly, that the prosecutors could only be reduced in rank in accordance with the Civil Service law.

In order to sustain the view expressed in the first proposition, counsel for the prosecutors pointed out that the act approved March 24th, 1885 (*Pamph. L., p. 130;* *Comp. Stat., p. 2391, § 256*), prescribes that the officers and men employed by municipal authority in the fire department of any city shall severally hold their respective offices and continue in their respective employment as such municipal officers and employes during good behavior, efficiency and residence in such city, except where, by statute, the term of any such officer and employe is determined and fixed and does not depend upon the pleasure or caprice of any municipal officer, officers or board authorized to make appointment or employment in said department, and that such officer or employe shall not

be removed from such office or employment for political reasons or for any other cause than incapacity, misconduct, nonresidence or disobedience of just rules and regulations. And from this counsel argues that according to the construction put on this statute, in *Michaelis* v. *Jersey City,* 49 *N. J. L.* 154, where it was held that the transfer of an employe in the Jersey City fire department from his position of engineer to that of stoker, the latter position being attended with different duties and different pay, was invalid, and it appearing that the reduction of the prosecutors in the present case is to a rank requiring different duties and less pay, therefore, the present case is controlled by the one cited, and the reduction in rank of the prosecutors must be declared invalid.

And it is further insisted that because section 1 of the act of 1906 (*Pamph. L., p.* 429; *Comp. Stat., p.* 2402, *pl.* 298) provides, among other things, that battalion chiefs shall hold their office or employment during good behavior and shall be removed for cause after a hearing or opportunity therefor is afforded, the word "cause" in the statute must be held to mean one of the causes designated in the act of 1885.

The force of this argument is much weakened by the fact that in an act entitled "An act to remove the fire and police departments in the cities of this state from political control," approved May 2d, 1885 (*Pamph. L., p.* 326; *Comp. Stat., p.* 2341), under which a board of fire commissioners was organized in the city of Newark, it is provided by section 1, *placitum* 64, page 2341 of the compiled statutes that the board of fire commissioners shall be entrusted with the government, control and management of the fire department, and with the direction and control of all public fire matters, subject to the inspection and supervision of the common council of such city, as in the act provided.

And that by *placitum* 70, section 7, it is further provided, *inter alia,* that the board shall be authorized and empowered to employ such persons as may be deemed necessary by said board from time to time, and shall be authorized and empowered to declare vacant any and all of the offices or posi-

tions therein or thereunder as to such board may appear best for the public interest in the department.

And that by *placitum* 71, section 8, it is further provided, *inter alia,* that the board shall have full power and right to suspend and to expel or discharge any person employed or appointed in or under the control of the board, provided good cause shall be shown for such suspension, expulsion or discharge after an investigation by such board.

The legal effect of these provisions, and their effect on the provisions of the earlier act of 1885, *supra,* was dealt with by the Court of Errors and Appeals in *Newark* v. *Lyon,* 53 *N. J. L.* 632, which case involved the legality of a resolution of the board of fire commissioners abolishing the call system in the fire department, which resulted that all members of the fire department, who were "call members," ceased to be such and lost their employment.

Judge Scudder, who delivered the opinion of that court, in discussing the nature of the tenure of office held under the acts referred to (on *p.* 635), said: "They cannot in such a case be tried and discharged for any of the causes named in the statute, for there is no incapacity, misconduct, non-residence or disobedience of orders that can be shown against them. The cause is not in them, but in the public advantage of the change. They must, therefore, remain in office or be dealt with in some way satisfactory to themselves. But why should cities be obliged to retain a larger number of men in service when a select body of a smaller number will be sufficient and do better service, when constantly on duty? This embarrassment was certainly not contemplated when these acts for the protection of deserving men against the designs of successful politicians, hurtful to the public as well as to the incumbents, were passed, and such construction should not be given to them." And (on *p.* 637), the learned justice, in speaking of the powers of the board, said: "It certainly can in its government, control and management of an existing department vacate or abolish superfluous, expensive and antiquated offices, if done in good faith to promote the efficiency of the service, although it may displace some men

whose positions are secured to them during good behavior. The tenure of office is qualified by the continuance of the office."

Counsel for the prosecutor does not contend that under *Newark* v. *Lyon, supra,* the board of fire commissioners had no power to abolish or vacate the position of a battalion chief. His contention is that because the board did not attempt to vacate any office or to abolish the rank of battalion chief the demotion of the prosecutors did not fall within the reasoning of that case. We think the present case is clearly within the reasoning of Newark *v.* Lyon.

We are unable to perceive any difference in principle, in so far as the economical administration of governmental affairs is concerned, between the act abolishing an office or position that is needless and the act of reducing men in rank or discharging them altogether from office or position whose services in that office or position are unnecessary and needless. Both acts aim at economy in the public service. It is just as vicious and injurious to the public welfare to keep men in office or position whose services are not needed as to maintain needless offices or positions. Both involve a useless and unwarranted expenditure of the money of the taxpayer.

The contention of counsel carried out to a logical conclusion would require this court to declare that in order to get rid of unnecessary employes in office or position that the office or position be first abolished, and this irrespective of the fact whether or not such office or position constituted an essential part of the government. The legislature never intended anything so unreasonable as that. The fact that the services of the prosecutors were not needed as battalion chiefs constituted a good cause for their reduction to a rank where their services could be utilized to maintain the efficiency of the fire department. This is what the board of fire commissioners evidently thought when they effected the change.

Section 24 of the Civil Service law (*Comp. Stat., p.* 3804), which has also been invoked·in behalf of the prosecutors, does not tend to protect them against reduction in rank where such reduction was not the result of discrimination

because of their religious or political opinions or affiliations, but was made in the interest of economy in the affairs of government.. *Paddock* v. *Hudson Tax Board*, 82 *N. J. L.* 360; *Colgarry* v. *Street Commissioners of Newark*, 85 *Id.* 583.

The testimony taken in the present case tends to establish that the services of the prosecutors were not needed as battalion chiefs, and that their reduction in rank and pay by the board of fire commissioners was warranted upon the ground of economy.

The writs will be dismissed, with costs.