STATE EX REL. MILLER, Respondent, vs. BAXTER, Mayor, and others, Appellants.

*February 13—March 9, 1920.*

*Municipal corporations: City of Superior: Power of mayor to remove police officer to reduce force to that authorized by council: Board of police and fire commissioners: Powers: Motive of council in enacting ordinance.*

1. The power of the mayor of the city of Superior, under its charter (Laws 1891, ch. 124, sec. 22), to designate the members of the police force to be discharged so as to conform to an ordinance reducing the force, is not affected by the police and fire commission law, the power conferred on the board of police and fire commissioners by sec. 959—40m, Stats., to organize and supervise the police department, being applicable only to cities of the third and fourth classes, and the power of the board, under sec. 959—45, to remove a policeman being for cause only.

2. The motive of the common council in enacting an ordinance is not a proper subject of judicial inquiry; it is enough that the council had the power under the city charter and acted in the manner prescribed by law.

APPEAL from a judgment of the superior court of Douglas county: SOLON L. PERRIN, Judge. *Reversed.*

The city of Superior is a city of the second class, under a special charter (ch. 124, Laws 1891). In January, 1912,

the city adopted the commission form of government, and in April, 1918, the defendant *F. A. Baxter* was elected mayor of the city. The city has a board of police and fire commissioners, created pursuant to the provisions of the police and fire commission law (sec. 959—40, Stats. 1917). The board of police and fire commissioners have adopted rules and regulations for the management and control of the police department. The relator was duly appointed a member of the police department of the defendant city on September 1, 1910, and was on May 29, 1915, promoted to police sergeant. In May, 1919, an ordinance was prepared, introduced, and passed by the common council reducing the number of policemen by eighteen. The defendant *Baxter,* as mayor of the city, on May 19th caused the relator, one detective, and ten patrolmen to be discharged, and their services were dispensed with after May 20, 1919. In October the relator, upon petition, secured an alternative writ of *mandamus.* Return was made, the relator answered the return, and upon the issues so made there was a trial by the court. The relator was awarded a peremptory writ, restoring him to his office, and from the judgment in favor of the relator the defendants, except Vincent McKinnon, chief of police, appeal.

For the appellants there was a brief by *R. I. Tipton,* corporation counsel, and *T. L. McIntosh,* assistant corporation counsel, and oral argument by *Mr. Tipton.*

For the respondent there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford.*

ROSENBERRY, J. The important question presented by this record for our consideration is this: In whom was the power vested, upon the reduction of the city's police force by ordinance adopted by the common council, to designate the members who should be discharged therefrom so as to conform to the ordinance? On the part of the relator it is

claimed that such power of designation was vested in the police and fire commission. On the part of the appellants it is contended that such power was vested in the mayor of the city of Superior.

It was conceded upon the argument that the power to determine the number of policemen is by the terms of the city charter vested in the common council. That part of the city charter which defines the powers and duties of the mayor is as follows (sec. 22, ch. 124, Laws 1891):

"The mayor shall be the chief executive officer, the head of the fire department and the chief of police of the city. He shall take care that the laws of the state and the ordinances of the city are observed and enforced, and that all of the officers of the city discharge their respective duties. . . . He shall appoint all watchmen, firemen and policemen, and may remove, suspend or reinstate any watchman, fireman or policeman in his discretion."

As the chief executive officer of the city it must be conceded that the mayor, prior to the adoption of the police and fire commission law, had full authority in a case such as is presented by the facts in this record to discharge members of the police department to conform to the regulations adopted by the common council. The question arises: Has this provision of the city charter been repealed or the power of the mayor been diminished by the enactment of the police and fire commission law?

It is not claimed that the provisions of the city charter have been expressly repealed. Sec. 959—41 provides that the chief of police and the chief of the fire department shall be appointed by the board of police and fire commissioners, and no person shall be appointed to any position either on the police force or in the fire department without the approval of said board. It requires the board to keep the names of all persons who have been approved by them for appointment in the various departments. Sec. 959—42 provides that the board shall cause rules and regulations to

be prepared and adopted governing the election of persons for appointment or promotion in either the police force or fire department. Sec. 959—44 provides that the common council shall by ordinance fix the salaries of the officers and men. Sec. 959—45 provides for the suspension or removal of policemen or firemen. The police and fire commission law, being a general act intended to govern the whole subject to which it relates, and to embrace the entire law in relation thereto, must be held, when applicable, to supplant the provisions of the city charter which apply to a single case, and are earlier in time. In specifying the powers of the board of police and fire commissioners the legislature, by sec. 959—40m, provided that in cities of the third and fourth classes the commission should have power to organize and supervise the police and fire departments in accordance with certain provisions of the statute. But we are cited to no provision of the statute, and we find none, which confers upon the board of police and fire commissioners in cities of the second class this supervisory power. The fact that such powers are conferred upon cities of the third and fourth classes, and withheld from cities of the second class, which are not included in the provisions for cities of the first class, leads almost irresistibly to the conclusion that the legislature did not intend that the board of police and fire commissioners in cities of the second class should have such supervisory power. No authority is conferred by the sections of the statute creating a board of police and fire commissioners which are applicable to cities of the second class upon the board of police and fire commissioners of cities of the second class to act under the circumstances disclosed by the facts in this record. Removals by the board can be made for cause only. The discharge of the relator was not a removal within the meaning of that term as used in the police and fire commission act. The office which the relator had occupied no longer existed.

We are of the opinion that the provisions of the police

State ex rel. Miller v. Baxter, 171 Wis. 193.

and fire commission act applicable to cities of the second class, were not intended to and did not vest in the board of police and fire commissioners supervisory control over the police and fire departments of cities of that class. Neither did the enactment. of the police and fire commission law operate to diminish the power conferred by the city charter upon the mayor, excepting in the respects mentioned. It took from him the power of appointment and the power of removal where removal is for cause. It is significant that the general power of supervision is withheld from the board of police and fire commissioners in cities of the second class, but conferred upon cities of the third and fourth classes. In view of that fact the court must conclude that the legislature intended to withhold from the board of police and fire commissioners of the cities of the second class supervisory powers and to confer only those powers expressly enumerated. None of the provisions of the police and fire commission law is applicable to the situation presented by the facts in this case. We find no such power conferred. It must therefore remain where it was vested by the city charter, namely, in the hands of the mayor. The discharge of the relator was therefore valid and he is not entitled to reinstatement.

In the relator's reply to the return of defendants the relator alleges that the reduction in the police force and the dismissal of the relator was not in good faith, and the trial court found:

"That the relator was not dismissed from the service of the city in the interest of economy or for the purpose of having the police force reorganized by the board of police and fire commissioners, but was dismissed for the purpose of evading the provisions of the act of the legislature creating said board of police and fire commissioners."

The trial court also said:

"There is no question touching the preparation, introduction, and passage of this ordinance [the ordinance reducing the number of policemen] which is open to judicial inquiry."

If the common council acted in the exercise of a power vested in it by the charter and in the manner prescribed by law, its motive in enacting the ordinance in question is not a proper subject of judicial inquiry. *State ex rel. Rose v. Superior Court,* 105 Wis. 651 (81 N. W. 1046), at p. 677.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the petition.