PENDERGAST *v.* INTERNATIONAL TYPOGRAPHICAL UNION OF NORTH AMERICA.

1. ASSOCIATIONS—INTERNATIONAL TYPOGRAPHICAL UNION—POWERS OF PRESIDENT.

   Under constitution and by-laws of International Typographical Union, a voluntary association, president could reduce number of representatives employed without approval of executive council, unless representative was removed for cause.

2. MASTER AND SERVANT—WORK AND LABOR—DISCHARGED EMPLOYEE
   —ASSOCIATIONS.

   Representative of International Typographical Union, who was
   lawfully removed by its president, in interest of economy, is
   not entitled to recover for services rendered and expenses in-
   curred thereafter.

Appeal from Wayne; Richter (Theodore J.), J.
Submitted October 6, 1932. (Docket No. 34, Calen-
dar No. 36,703.) Decided January 25, 1933.

Assumpsit by John E. Pendergast against Inter-
national Typographical Union of North America, an
unincorporated voluntary association, for sums al-
leged to be due for services rendered. Judgment
for defendant. Plaintiff appeals. Affirmed.

*McLeod, Fixel, Abbott & Fixel,* for plaintiff.

*Maurice Sugar* (*Samuel B. Keene,* of counsel),
for defendant.

McDONALD, J. The International Typographical
Union of America was formed in 1852. It maintains
its offices in Indianapolis, Indiana. It has a mem-
bership of 78,000. Its elective officers are president,
three vice-presidents, and a secretary-treasurer.
They are all elected at the same time in May for two
years, but do not take office until November follow-
ing their election. Together the elective officers con-
stitute an executive council. The Union is governed
by a constitution and by-laws. The constitution
provides for the appointment by the president, with
the approval of the executive council, of the neces-
sary number of representatives who perform certain
duties prescribed by the president. Charles P.
Howard was elected president in May, 1926, and

went into office November 1st, of that year.   At
that time there were 24 representatives.   He notified
12 of them that their work as representatives
terminated on November 1, 1926, when the term of
the retiring president expired.   The plaintiff was
one of the 12.   He refused to recognize the right of
the president to discontinue his services and con-
tinued to work until July 16, 1927.   To recover for
his services and expenses during the period that he
worked after he was notified to quit, he brought this
suit.   His case was tried by the court without a jury,
and judgment was entered in favor of the defend-
ant.   From this judgment he has appealed.

Two questions are involved, either of which is de-
cisive of the issue.   The first is whether the presi-
dent of the Union had authority to discharge a
representative.   The second is whether, under the
constitution of the Union, the term of office of the
representatives automatically terminated with that
of the president who appointed them.

Section 3 of article 5 of the constitution provides:

"The term of office of all elective officers except
auditors, shall be for two years or until their suc-
cessors are elected and qualified."

Section 10, article 6, provides:

"The president with the approval of the executive
council shall have power to appoint all necessary
representatives.   The appointment of any repre-
sentative may be revoked by the executive council
for just cause.   Representatives shall assist in the
organization of new unions, under direction and con-
trol of the president, and perform such other duties
as may be assigned them by the president or the
executive council."

Section 5, article 3, of the by-laws, provides:

"It shall be the duty of each representative to correspond with or visit such towns or places where no Union exists and there are printers or allied craftsmen at work, as the president may direct, with a view to encouraging them to embrace unionism."

Section 1, article 3, of the by-laws, provides:

"He shall, with the approval of the executive council, appoint all necessary representatives, shall oversee and direct the operations of representatives, and shall, when necessary, visit such place or places as may require his presence or personal attention."

It will be noted that as to revocation of the appointment of representatives the only power vested in the executive council is that it may revoke for "just cause." As to the appointment of representatives, it may approve or reject those appointed by the president. So in this case, to legalize the revocation of the plaintiff's appointment, it was not necessary for the president to submit the matter to the executive council. It had nothing to do with a revocation except "for cause," and there was no cause within the meaning of that term as used in the constitution of the Union. The representatives are appointed for no definite term. They may be removed summarily by someone. The executive council cannot do it. Why not the president? True, the constitution gives him no such express authority, but does it not follow from the general authority conferred on him and his duty as president to build up and maintain an efficient organization? The financial condition of the Union at the time Mr. Howard became president shows the necessity of the exercise by the president of the power to reduce

the number of representatives by removal.  At that time there was a deficit of $800,000 in the general fund.  The salaries and expenses of the representatives are paid out of that fund.  There were 24 representatives, twice as many as were necessary, to transact the business for which they were appointed. He removed 12 of them.  The plaintiff was one of the 12.  With the finances of the Union so largely in the red, it was the president's duty to balance the budget.  As president, he was the one responsible party charged with the duty of keeping the Union in a sound financial condition during his administration.  He was elected for that purpose; and the 78,000 members who elected him expected him to keep the Union out of bankruptcy.  These representatives were appointees for no definite term. They had no contractual relations with the Union. The holding of an office by appointment or election is not based on contract.  No cause need be assigned for their removal.  Their work was assigned to them by the president and performed under his direction. They made all of their reports to him.  They were his aides in carrying on the work for which the Union was formed.  The constitution gave him the right to appoint the necessary number of representatives.  It would seem that the power to determine the number necessary carried with it the power to reduce the number when necessary.  The provision allowing the executive council to discharge for cause is additional to the power of the president, and has no bearing on the question we are discussing.

We think the president's authority to remove the plaintiff as representative is reasonably implied from the power conferred on him by the various provisions of the constitution.  As he was lawfully

removed, he is not entitled to recover for services rendered and expenses incurred after that time.

It is not necessary to discuss the other reason relied on by the defendant in justification of plaintiff's removal.

The judgment of the circuit court is affirmed, with costs to the defendant.

Clark, Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.