SLAVIN *v.* CITY OF DETROIT.

STANTON *v.* SAME.

1. MUNICIPAL CORPORATIONS—APPOINTMENT AND REMOVAL OF POLICE-MEN AND FIREMEN—DETROIT CHARTER.
   While council of city of Detroit may indirectly control number of officers employed by limiting appropriation, right of appointment and removal, increase and decrease of forces, under city charter, remains in hands of police commissioner and board of fire commissioners, respectively.

2. SAME—CIVIL SERVICE PROVISIONS—REDUCTION OF FORCE.
   That appointments to fire department force of city of Detroit are regulated by civil service provisions in city charter, *held*, not to affect dismissals made for reasons of economy.

3. SAME—MANDAMUS—REINSTATEMENT.
   Members of police and fire departments of city of Detroit, who were relieved of duty by order of police commissioner and board of fire commissioners, respectively, in good faith and in interest of economy, are not entitled to writ of mandamus directing their reinstatement, on ground that city council had sole right to order their dismissal.

Appeal from Wayne; Warner (Glenn E.), J., presiding. Submitted January 25, 1933. (Calendar Nos. 36,908, 36,909.) Decided March 2, 1933.

Separate petitions by Stanley Slavin and others and Warren Stanton to compel the City of Detroit, its mayor, and officers, to reinstate plaintiffs as policemen and fireman, respectively. Writs denied. Plaintiffs appeal. Affirmed.

*Augustus C. Troden, George A. Lumsden,* and *George A. Porter,* for appellants.

*Clarence E. Wilcox,* Corporation Counsel, *Nathaniel E. Goldstick* and *Paul T. Dwyer,* Assistants Corporation Counsel, for appellees.

Butzel, J. Stanley Slavin, Steven J. Martek, and Harry E. Peterson, relators, appeal from an order denying a writ of mandamus directing the city of Detroit, Frank J. Murphy, its mayor, and James K. Watkins, its police commissioner, respondents, to reinstate relators as patrolmen on the police force. Relators were relieved from duty without pay, but not discharged, by virtue of an order issued by the police commissioner on March 8, 1932, stating that the police department had been ordered to effect a saving of $122,000 in operating expenses between March 8th and June 30, 1932, and that the only method of bringing this about was through a reduction of the personnel by releasing from duty men who had seen the shortest service in the department. In accordance with the order, 166 members of the force, including the relators, were relieved from active duty, without pay and until further notice.

No fault is found with the method in which relators were laid off, nor do they deny the necessity

for the savings the commissioner was ordered to make. They contend, however, that sufficient funds were provided by appropriation to pay the entire force up to June 30, 1932, and that it became the duty of the commissioner to use up the appropriation as made before instituting economies, and further, that the common council, the legislative body of the city of Detroit, had the sole right to order a decrease in the number of men employed on the police force.

The respondents show that the relators and others were relieved of duty without pay solely on account of a shortage of funds in the treasury of the city, and that, had they not been so relieved, there would not have been funds available with which to continue payment of the force that remained. Respondents seek, by motion, to amend the record by showing specifically very large delinquencies in the payment of city taxes. We need not consider this motion, for the fact that economies were necessary is not disputed. Relators also claim that they differ from ordinary employees of the city because of the fact that they are officers who have taken an official oath of office.

In a companion case, Warren Stanton, a city fireman, seeks reinstatement by the board of fire commissioners through similar proceedings. Relator was certified to the fire commissioners by the civil service commission of the city of Detroit. He and 124 other members of the fire department were laid off because of lack of funds at about the same time as the members of the police. The questions raised in both the policemen's and fireman's actions are similar. The cases were argued together, and this opinion applies to both cases, except as otherwise noted.

It is claimed that, under the charter provisions of the city of Detroit, neither the police commissioner nor the board of fire commissioners had a right to reduce their respective forces. Pertinent provisions of the Detroit city charter are as follows:

Title 4, chap. 21, § 5, subdivision (c) (referring to the police commissioner):

"May change the titles of police officers and employees under him, * * * designating such titles as he may see fit, creating whatever offices and positions he may deem necessary for the proper organization and conduct of the department."

Title 4, chap. 15, § 5 (referring to the board of fire commissioners):

"The board shall appoint a secretary, and in accordance with the provisions of this charter relative to civil service, a chief of the fire department, a fire marshal, and such other assistants and employees as may be necessary."

Under these provisions, the police commissioner may create whatever offices and positions he may deem necessary for the proper organization and conduct of the department, and the board of fire commissioners may appoint the fire chief, fire marshal, and such other assistants and employees as may be necessary. Plaintiffs contend, however, that the appointive power and the right to increase or decrease the personnel lies with the council because of its power to fix the budget and the appropriations each year. While it is true that the council may indirectly control the number of officers and employees by limiting the appropriation, the right of appointment and removal, increase and decrease of the forces, still remains in the hands of the police com-

missioner and the board of fire commissioners respectively.

It is undisputed that the ''lay-off'' was effected in good faith when it became obvious that the entire appropriations would not be available. Plaintiffs claim, however, that the power to reduce the respective forces was solely in the council, and that a resolution or an ordinance was essential in order to achieve the desired result. They rely upon an extremely brief opinion in *State, ex rel. Rowling,* v. *Mayor of Butte,* 43 Mont. 331 (117 Pac. 604), and on *Neumeyer* v. *Krakel,* 110 Ky. 624 (62 S. W. 518). In the latter case, in the decision of which the court divided, the charter differed materially from that of the city of Detroit. A specific number of policemen was provided by ordinance and the statute authorized the board of safety to increase its force only ''provided the general council shall have previously made an appropriation for that express purpose.'' It was held that, under the particular provisions of that charter, the power was vested in the general council to regulate by ordinance the number of policemen, the officers to be appointed, and the salaries to be paid. Some support for plaintiffs' contentions may also be found in *Oldham* v. *Mayor and Aldermen of Birmingham,* 102 Ala. 357 (14 South 793); *State, ex rel. Miller,* v. *Baxter,* 171 Wis. 193 (176 N. W. 770); and *O'Neill* v. *Williams,* 53 Cal. App. 1 (199 Pac. 870). In all of these cases, it will be found that the charters differed from that of the city of Detroit, in which the power of appropriation affords the council its only means of control over the size of its police and fire personnel.

In *State, ex rel. McDermott,* v. *Wilkinson,* 88 Conn. 300 (90 Atl. 929), a dispute arose as to whether the power of appointment rested with the town meeting

or the selectmen. The act creating the board of selectmen directed them to organize and maintain a fire department and make necessary rules and regulations therefor. No specific provisions were made as to the personnel. It was held that—

"The imposition of this duty carried with it by necessary implication the power of selection of members of the department, in the absence of other provision therefor in the act."

The court further quoted from *State, ex rel. Reiley,* v. *Chatfield,* 71 Conn. 104 (40 Atl. 922):

"It is the common rule that where the power of appointment is conferred in general terms without restriction, the power of removal at discretion and at the will of appointing power is implied, and always exists unless restricted and limited by some other provision of law."

The Connecticut case seems to be directly in line with the facts in the present case, except that the language in the charter of the city of Detroit indicates quite definitely that the power of appointment or removal, increase and decrease, rests with the police and fire commissioners, inasmuch as they are given the authority to "create" and "employ" offices and officers as needed. In *Pendergast* v. *International Typographical Union of North America,* 261 Mich. 553, we held that—

"It would seem that the power to determine the number necessary carries with it the power to reduce the number when necessary."

It has generally been held that removals are justified for reasons of economy. *Venable* v. *Board of Police Commissioners,* 40 Ore. 458 (67 Pac. 203); *Matter of Lazenby* v. *Elmira Board of Police,* 76

App. Div. 171·(78 N. Y. Supp. 302), wherein it was held:

"The police force of the city of Elmira can only be paid by appropriations made by the common council of the city. For the year in which the discharge was attempted the appropriation for the police force was $29,000. To pay the police force as it stood at the time of the adoption of this resolution the sum of upwards of $33,000 was required. It became necessary to reduce that force. * * * The good faith of the police board in discharging Lazenby for purposes of economy is well sustained in the record."

To similar effect are *Lethbridge* v. *Mayor, etc., of New York,* 133 N. Y. 232 (30 N. E. 975); *Wyse* v. *Board of Police Commissioners,* 68 N. J. Law, 127 (52 Atl. 281).

In coming to our conclusion, we have not been unmindful of the fact that appointments to the fire department force are regulated by civil-service provisions in the charter, which, however, do not affect dismissals made for reasons of economy. See *Swantush* v. *City of Detroit,* 257 Mich. 389; *Owen* v. *City of Detroit,* 259 Mich. 176; *Durkin* v. *Newark Board of Fire Com'rs,* 89 N. J. Law, 468 (99 Atl. 432); *Essinger* v. *New Castle,* 275 Pa. 408 (119 Atl. 479). As to the location of the power of appointment and removal of firemen, see *Delaney* v. *Detroit Board of Fire Commissioners,* 244 Mich. 64.

The order of the lower court, denying relators' petitions for writs of mandamus, is affirmed, without costs.

MCDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.